The People of the State of Illinois ex rel. Edward J. Barrett, Plaintiff, v. Central Republic Trust Company, Defendant.
Dominick Giganti, Administrator of the Estate of Frank Montelbano, Deceased, Appellee, v. R. G. Wrightson et al., Appellants.

Gen. No. 38,948.

Opinion filed May 4, 1937.

LORD, LLOYD & BISSELL, of Chicago, for appellants; A. C. WETTERSTORM and GORDON R. CLOSE, both of Chicago, of counsel.

FRANCIS E. CASH, of Chicago, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

From a judgment entered in favor of Dominick Giganti, administrator of the estate of Frank Montelbano, deceased (hereinafter called appellee), against R. G. Wrightson et al. (hereinafter called appellants), in the sum of $1,922.25 with interest from April 26, 1935, the latter appeal.

The auditor of public accounts, Edward J. Barrett, filed a bill of complaint to dissolve Central Republic Trust Company, a corporation, charging that it was insolvent and praying for its dissolution and the settlement of its affairs. The complaint alleges, *inter alia,* that the organization of the bank resulted from a consolidation of Chicago Trust Company, a corporation, and Central Trust Company of Illinois, a corporation, on July 25, 1931; that on November 20, 1934, the auditor appointed William L. O'Connell receiver of the bank and the latter had taken possession of the books, records and assets of the bank and was performing the duties incidental to such receivership.

"That in order to protect the interests of said bank and all persons interested therein, it will be necessary for said Receiver to compromise or compound some of the debts due and owing or to become due and owing to said bank and any claim or claims which said bank now has or may have against any person or persons about which claims there may be any controversy; to sell the personal property and real estate, if any, owned by said bank and to take such steps as may be necessary on behalf of said defendant bank within a reasonable time to resign all trusts, guardianships, conservatorships and all appointments as Executor, Administrator or Receiver, making in each case a proper accounting on behalf of said defendant bank; and that said Receiver should be permitted by this Court to file with this Court, from time to time, as the interests of the bank may require, petitions asking the Court to hear such petitions and grant such orders thereon as will properly authorize and empower said Receiver to compromise or compound debts or claims or to make such sale or sales of personal property or real estate, or either, upon such terms and conditions and at such times as the Court shall order and that said Receiver should promptly make a report to the Court of all such

sales of real or personal property and such report, when approved by the Court, shall be binding upon all persons interested in such property and that said Receiver should be permitted to present to this Court, from time to time, petitions seeking its aid and direction relative to various other problems which may arise in the course of said receivership and that upon the settlement of the affairs of said bank and the disposition of its assets, the corporate existence of said bank should be terminated by decree of this Court.

" . . .

"That said Receiver may, upon the filing of proper petitions, be authorized and directed by this Court, by orders to be entered herein from time to time, to sell or compound all bad or doubtful debts due and owing said bank and to sell all the real estate, if any, and personal property belonging to it on such terms and in such manner as such orders may provide; that said Receiver may be authorized and directed to make compromises of claims and debts due and owing said bank when the best interests of the creditors require that compromises be made, on condition that all such compromises, adjustments and settlements shall be made subject to the approval of this Court.

"That said Receiver may be authorized to present, from time to time, petitions to this Court seeking its aid and direction with reference to various problems which may arise in the administration of the assets, property and estate of said bank."

The complaint prays, *inter alia,* that plaintiff and receiver may have such other and further relief in the premises as equity may require and to the court shall seem meet, and that all orders, steps and proceedings necessary or proper in the premises may be had and taken, as equity may require.

On October 9, 1935, appellee filed a verified intervening petition in the cause, in which he alleges, *inter alia,*

that on May 8, 1934, he filed, in the superior court of Cook county, a suit at law against Central Republic Bank & Trust Company, a corporation, subsequently known as Central Republic Trust Company, a corporation; that the suit was based upon the forgery of the signatures of appellee and two other parties to a check dated March 7, 1930, drawn by Public Service Company of Northern Illinois on Central Trust Company of Illinois, a banking corporation, in the sum of $1,500, payable to Joseph Barbera, Marie Rosa Giganti, Dominick Giganti and R. R. Covello; that appellee sustained loss by the forgery of the check and the payment thereof by said Central Trust Company of Illinois, which was engaged in the banking business in Chicago for many years and was subsequently consolidated or merged into Central Republic Bank & Trust Company, a banking corporation, which corporation was on November 6, 1932, and thereafter known as Central Republic Trust Company, a corporation; that on June 14, 1935, a judgment was entered in said suit in appellee's favor as administrator of the estate of Frank Montelbano, deceased, and against defendant Central Republic Trust Company in the sum of $1,922.25 and interest; that said defendant bank and William L. O'Connell, receiver, were represented in the cause; that the judgment is still in full force and effect and has not been reversed, modified nor appealed; that Central Republic Trust Company was and is insured against loss by means of forged or altered indorsements; that it is the assured under policy D–59792, issued on March 13, 1934, by Lloyds London in the sum of $894,555, and policy D–59792–A, issued on the same date by Lloyds London in the sum of $105,445; that said policies were in the form of a blanket bond and covered losses such as the present one sustained by appellee; that appellee has made demand on Lloyds London for the amount of the judgment heretofore entered and has not received the

amount of the judgment nor any part of it; that "it would be to the best interests of the creditors of said Central Republic Trust Company, a banking corporation, that said judgment be paid to your petitioner either by said Receiver paying out of funds in his hands, the sum specified, or to avoid circuity of action that an order be entered herein upon said Lloyds London to pay, or cause to be paid, said judgment, either by paying the full amount thereof to William L. O'Connell, Receiver, for the use and benefit of your petitioner, or directly to your petitioner, or his solicitor of record for him." Appellee prays "that an order be entered in this cause directing William L. O'Connell, Receiver, to pay in full said judgment, interest and costs, out of funds in his hands as such Receiver, or in the alternative that the court order Lloyds London to pay said amount to said Receiver for the sole use and benefit of petitioner, or that the court order that Lloyds London pay said sums direct to your petitioner"; that upon such payment appellee file his satisfaction of the said judgment; that the receiver answer the petition within five days from the date of the petition; "that this court order that the writ of summons of this court issue to the sheriff of Cook County, to summon defendant, Lloyds London in this cause to make full and complete answer to this petition." By order of court a summons issued, which summoned Lloyds London to answer the said petition. The receiver answered the petition but it is unnecessary to state the nature of the answer. On November 8, 1935, appellants filed the following:

"Amended Special Appearance
and Motion to Dismiss

"R. G. Wrightson and Others, being certain Underwriters at Lloyd's, London, named in a certain 'Lloyd's Banks' and Trust Companies' Policy' No.

D59792A, expiring December 1, 1934, and W. E. Hargreaves and Others, being certain Underwriters at Lloyd's, London, named in a certain 'Lloyd's Banks' and Trust Companies' Policy' No. D59792, expiring December 1, 1934, both said R. G. Wrightson and Others and said W. E. Hargreaves and Others being heretofore referred to in the above entitled cause by the misnomer, 'Lloyds London' appear specially solely and for the purpose of objecting, as hereinafter indicated, to the jurisdiction of this court, and move the court for the entry of an order dismissing, as to said R. G. Wrightson and Others and as to said W. E. Hargreaves and Others, the petition heretofore filed herein of Dominick Giganti, Administrator of the Estate of Frank Montelbano, deceased, for the reason that there is a want of jurisdiction in this court in the above entitled cause over said R. G. Wrightson and Others and over said W. E. Hargreaves and Others, and for the further reason that there is want of jurisdiction in this court in the above entitled cause over the subject matter of said petition of said Giganti.''

In support of the foregoing appellants filed the following affidavit:

''Burnham M. Fisk, being duly sworn on oath deposes and says that he is one of the solicitors for and is the duly authorized agent in this behalf of R. G. Wrightson and Others, being certain Underwriters at Lloyd's, London, named in a certain 'Lloyd's Banks' and Trust Companies' Policy' No. D59792A, expiring December 1, 1934, and W. E. Hargreaves and Others, being certain Underwriters at Lloyd's, London, named in a certain 'Lloyd's Bank' and Trust Companies' Policy' No. D59792, expiring December 1, 1934; that none of said Underwriters named in either of said policies is a party to, nor the agent of a party to, nor in any way interested in the above entitled cause or

the subject matter thereof; that the petition of Dominick Giganti heretofore filed herein relates to a purported liability on the part of R. G. Wrightson and Others and W. E. Hargreaves and Others to the Central Republic Trust Company or to the receiver thereof; but that said R. G. Wrightson and Others and said W. E. Hargreaves and Others are not indebted in any amount to William L. O'Connell, Receiver, or the Central Republic Trust Company, defendant herein."

Thereafter an order was entered striking the special appearance of appellants, overruling their motion to dismiss the petition, and ordering them to answer the petition. Appellants then filed a verified answer, which contains the following:

"Now come R. G. Wrightson and Others, being certain Underwriters at Lloyd's, London named in a certain Lloyd's Banks' and Trust Companies' Policy No. D59792A, and W. E. Hargreaves and Others being certain Underwriters at Lloyd's, London named in a certain Lloyd's Banks' and Trust Companies' Policy No. D59792, by Lord, Lloyd & Bissell, their attorneys."

The answer admits the judgment in favor of appellee. It then recites:

"These respondents admit that the Central Trust Company of Illinois was a banking corporation and was engaged in said banking business for a long time prior to July 25, 1931; admit that on to-wit, July 25, 1931 the said Central Trust Company of Illinois consolidated with the Chicago Trust Company, forming the Central Republic Bank and Trust Company; admit that on to-wit, October 6, 1932 the deposit liability of the Central Republic Bank and Trust Company was assumed by The City National Bank and Trust Company of Chicago, and that subsequently on, to-wit, November 26, 1932 the name of the Central Republic Bank and Trust Company was changed to Central

Republic Trust Company; admit that on to-wit, November 20, 1934, the said Edward J. Barrett, as Auditor of Public Accounts of the State of Illinois, appointed William L. O'Connell as receiver of said Central Republic Trust Company, and that thereafter on to-wit, November 21, 1934 said appointment was confirmed by this honorable court."

The answer admits that appellants issued the two policies in question, but denies that they covered losses such as the one described in the petition of appellee, denies that they are indebted to Central Republic Trust Company, or any one else, by reason of the payment of the forged check.

Appellants contend that "the trial court did not have jurisdiction in this proceeding over the intervening petitioner, the respondents or of the subject matter of the intervening petition, because the intervening petitioner is a mere stranger bringing in other strangers, the respondents, for the purpose of litigating matters foreign to the issues of this proceeding," and that the court erred in not sustaining their motion to dismiss the intervening petition for want of jurisdiction. We may say, at this point, that under the record no contention could be made that the court was without jurisdiction of the persons of appellants; and it would be a sufficient answer to the instant contention to say that when the motion to dismiss for want of jurisdiction "over the subject matter of said petition of said Giganti" is considered in the light of the affidavit in support of it, it would seem that the real ground of the motion, in so far as it applies to the subject matter of the petition, is that appellants were not indebted to the receiver nor the Central Republic Trust Company. Such an averment amounts to no more than an imperfect plea of non assumpsit. But assuming that the motion to dismiss for want of jurisdiction of the subject matter is sufficient, we find no real merit in

appellants' argument in support of the instant contention. The major point made by appellants is "that even the receiver who is a party to the instant suit could not bring in the respondents who are strangers for the purpose of adjudicating a claim which he might make against them upon the policies issued to the Central Republic Trust Company. But he would have to bring an independent suit." That the jurisdiction of the court in a dissolution proceeding is not as limited as appellants argue, see *People v. West Side Trust & Sav. Bank,* 362 Ill. 607, wherein the court held (pp. 617 & 618):

"The primary purpose of the suit instituted by the Auditor was the ultimate dissolution of the bank and the settlement of its affairs. . . . We find no language in section 11 [Banking Act] which can be distorted to mean that the orderly dispatch of the business of courts should be upset by requiring the services of other courts for purposes that can be performed by the one. The court in charge of the liquidation of a bank is not a mere conduit for the benefit of the receiver."

The court also calls attention to the fact that the bill contained a prayer for general relief. See also *People ex rel. Nelson v. Citizens Trust & Sav. Bank,* 273 Ill. App. 128, wherein the facts are very similar to those in the instant case, and where the court stated that it was to the interest of the receiver, as well as of the creditors of the bank, to have the claim of the petitioner satisfied out of the fund created by the policy and not out of the general assets, and that if the United States Fidelity and Guaranty Company was liable to the bank under its policy it was a debtor to the bank; that it was proper for the chancellor, in order to avoid waste of time and expense, to order the Guaranty Company to pay the amount due directly to petitioner. It is true, as appellants point out, that

in that case no point was made that United States Fidelity and Guaranty Company was not rightfully brought into the proceedings, but from the reasoning of the chancellor it would seem likely that the point would not have been sustained had it been made. As indicated by the opinion in *People v. West Side Trust & Sav. Bank, supra,* if appellants were indebted under their policies to the receiver, why should the orderly business of dissolving the affairs of the bank be upset by requiring the receiver to sue appellants in another court for purposes that could well be performed by the court before whom the dissolution proceedings were pending? The trial court had the undoubted right to decide whether it would itself adjudicate upon claims against the receiver or would allow them to be liquidated elsewhere. To send the receiver to other courts to enforce the collection of debts due the bank might prolong indefinitely the dissolution proceedings and bring about an intolerable situation. Appellants failed to show that they were injured in any way by reason of the procedure followed. The cases cited by them in support of their contention are inapplicable to the instant situation. The further contention of appellants that appellee did not have the necessary interest in the suit to permit his intervention is sufficiently answered by *People ex rel. Nelson v. Citizens Trust & Sav. Bank, supra.* The trial court and the receiver were willing to have appellee proceed directly against appellants, and the latter were not injured by the procedure followed. What real difference did it make to appellants that appellee, instead of the receiver, was the intervening petitioner in the proceeding? The real question in the case, viz., Are appellants liable under their policies? is presented in the instant proceeding as fully as if the receiver had sued appellants under the policies by a separate action. The trial court, as well as the receiver, was, of course,

willing to have appellee assume the burden and expense of the proceeding against appellants.

Appellants contend that "the intervening petitioner as judgment creditor of the Central Republic Trust Company cannot recover from the respondents on the insurance policies issued by them to that bank because the policies insured that bank against losses it sustained by the payment of checks bearing forged endorsements, whereas the intervening petitioner's judgment against that bank is based on resolutions of consolidation whereby that bank became liable for a loss sustained by another bank, the Central Trust Company of Illinois, which is not named as an assured." From the record it appears that Central Trust Company of Illinois consolidated with Chicago Trust Company to form Central Republic Bank & Trust Company. Subsequently the latter company changed its name to Central Republic Trust Company. The consolidation agreement between Central Trust Company of Illinois and Chicago Trust Company provides:

"The consolidated corporation shall possess and be vested with all of the rights, privileges, powers, franchises, licenses, estate, effects, things in action, moneys, debts due upon whatever account, trusts, and property, real, personal and mixed, of every kind and character of said Chicago Trust Company and said Central Trust Company of Illinois, and shall be subject to all of their respective debts, liabilities and duties."

The policies provide that appellants "agree to pay and make good to the said Assured all such losses as they the said Assured . . . may during the space of Twelve Calendar Months from 7:00 a. m., of the First day of December, 1933 to 7:00 a. m., of the First day of December, 1934 sustain or discover that they have sustained in manner hereinafter mentioned . . . 3. By Reason of the acceptance, encashment or pay-

ment, whether received over the counter or through the clearing house or by mail, of forged or altered cheques or of cheques bearing forged endorsements or certifications. . . ." The policies further provide: "WARRANTED FREE OF ALL CLAIM—1. For losses not discovered within the said period of twelve calendar months and for losses sustained prior to 7:00 a. m., of the First day of December, 1933; but with the understanding that the Assured shall have the twelve calendar months following the date of termination or expiration of this Policy, in which to discover losses sustained between the date named in this Warranty and the date of such termination or expiration. . . . *Forgery Limit.* It is agreed that losses hereunder in respect of Forgery (Article No. 3 of the printed conditions of this Policy) are limited to $500,000. . . ." Attached to each policy is the following:

"6. *Special Forgery Rider*
     *in respect of Central Republic Trust Company.*
   "In consideration of an additional premium of $200.00 (included in the premium paid on this Policy) it is agreed that notwithstanding anything contained herein to the contrary, this policy is also extended to cover losses by reason of Forgery (in accordance with Article No. 3 of the printed conditions of this policy) which were sustained by the Central Republic Trust Company prior to the 1st December 1933, but which were discovered subsequent to the 15th February 1934; the liability of Underwriters in respect of any such losses being limited to $50,000. Subject in all other respects to the terms and conditions of this Policy." The gist of the argument advanced in support of the instant contention is not that Central Republic Trust Company did not sustain a loss by reason of the forgery in question, but that the loss was not occasioned by a *transaction* of Central Republic Trust Company; that under the terms of the policies Central Republic

Trust Company is insured only against losses it sustained by itself paying checks bearing forged indorsements, but that it is not insured against the instant forgery because Central Trust Company of Illinois, which paid the forged check, is not named in the policies as an assured. The Special Forgery Riders, for each of which Central Republic Trust Company paid an additional premium of $200, not only do not support appellants' position but run counter to it. It seems reasonably clear from the language of the riders and from the circumstances surrounding the parties at the time the riders were executed, that the officials of Central Republic Trust Company had in mind that the company was obligated to pay all of the "debts, liabilities and duties" of Chicago Trust Company and Central Trust Company of Illinois, and that they paid $200 additional premium on each rider to guard against such a contingency. Appellants concede, as they must, that Central Republic Trust Company sustained a loss by reason of the forgery in question, but they make the strained argument that the loss was sustained solely by reason of the conditions of consolidation and that the policy is not broad enough to provide for such a loss. We cannot sustain the argument. The policies, the addenda and the Special Forgery Riders were drawn by appellants, and if there is anything ambiguous about the provisions of the policies they must be construed against appellants.

"The original policy and rider were the creation of the defendant. In the policy and rider it calls Morris an employer. Since it had control in phrasing the policy and rider, any ambiguities, doubts or inconsistencies must be construed against it. (*Budelman v. American Ins. Co.*, 297 Ill. 222; *Monahan v. Metropolitan Life Ins. Co.*, 283 id. 136; *Treolo v. Auto Insurance Underwriters*, 348 id. 93.)" (*Morris v. Central West Casualty Co.*, 351 Ill. 40, 45.)

Appellants are presumed to have known of the consolidation. Indeed, in their amended answer they admit the facts in reference to the consolidation, and if they intended that the special riders should insure only transactions of Central Republic Trust Company it would have been a very simple matter for them to insert apt words of limitation, instead of the words "losses by reason of Forgery . . . which were sustained by the Central Republic Trust Company . . .," which appear in the riders. In legal effect Central Republic Trust Company was but a continuation of Central Trust Company of Illinois and Chicago Trust Company. As to the instant loss it stood in the shoes of Central Trust Company of Illinois, and appellee had the right to sue it directly.

Appellants have had a fair trial and the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

John J. Sullivan, P. J., and Friend, J., concur.