Wynnett W. McIlvaine et al., Appellants, v. City National Bank and Trust Company of Chicago et al., Defendants. City National Bank and Trust Company of Chicago and Charles G. Dawes, Appellees.

Gen. No. 40,902.

498

Heard in the second division of this court for the first district at the October term, 1939. Opinion filed May 14, 1942. Rehearing denied June 5, 1942.

BREEN, LYLE & O'KEEFFE and SEYFARTH & ATWOOD, all of Chicago, for appellants; JAMES W. BREEN, JOHN H. LYLE, KARL EDWIN SEYFARTH and BENTON ATWOOD, all of Chicago, of counsel.

PAM, HURD & REICHMANN and MICHAEL J. AHERN, all of Chicago, for certain appellee; HARRY BOYD HURD, ALEXANDER F. REICHMANN and ANDREW J. DALLSTREAM, all of Chicago, of counsel.

ARTHUR T. LEONARD and MICHAEL J. AHERN, both of Chicago, for certain other appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This appeal, which seeks to reverse a decree of the superior court, was originally perfected to the Supreme Court of Illinois. That court in *McIlvaine v. City National Bank & Trust Co. of Chicago*, 371 Ill. 565, holding that no debatable constitutional question was involved, transferred the appeal to this court. In its opinion in that case the Supreme Court stated the facts as follows:

"On May 14, 1937, W. W. McIlvaine, a stockholder of the Central Republic Trust Company, filed a complaint against the City National Bank and Trust Company of Chicago, Charles G. Dawes, the Central Republic Trust Company, and Charles H. Albers, receiver of the Central Republic Trust Company, to enforce a derivative cause of action in favor of the

Central Republic Trust Company, to recover for the value of the good will of that bank [claimed to be in excess of $8,000,000] which it was alleged was appropriated by the City National Bank and Trust Company without any consideration. Later, other stockholders were joined as parties plaintiff and a supplemental complaint was filed in which it was alleged that the Central Republic Trust Company was organized July 25, 1931, as a result of mergers and consolidations of a number of Chicago banks, with a capital of $14,000,000, and from that date carried on an extensive banking and trust business until October 5, 1932. That Charles G. Dawes had been connected with some of these institutions since 1902 and acting as chief advisor for, and, in conjunction with the officers and directors, managed and dictated the policies, activities and business affairs of the Central Republic Trust Company. That it was one of the five largest banks in the city of Chicago, and, as such, possessed valuable good will. That its deposits dropped during the depression, but that the rate of withdrawals was no greater than other banks similarly situated. That Charles G. Dawes was appointed a director of the Reconstruction Finance Corporation in February 1932, and continued to act as such until his resignation in June 1932, and that shortly after his resignation the Central Republic Trust Company applied to the Reconstruction Finance Corporation for a loan of $95,000,000, which was granted. That negotiations were then started for the organization of a new national bank to take the place of the Central Republic Trust Company, and that they were successfully consummated on October 4, 1932, and two days later the City National Bank and Trust Company of Chicago opened for business in the same quarters with practically the same officers and personnel, and that the Central Republic Trust Company did no more banking business after that date.

"It was further alleged that certain securities which had been transferred to the Reconstruction Finance Corporation as collateral to the loan above mentioned by the Central Republic Trust Company were purchased by the City National Bank and Trust Company, and that since that date that bank has been engaged in the general banking business which has continued to increase and develop. That there was also acquired by the new bank a valuable trust and real estate department which has continued to grow and prosper. That the good-will of the banking and real estate and trust departments was of great value and no consideration was ever paid to the Central Republic Trust Company by the new bank therefor. It was further alleged that on November 21, 1934, a receiver was appointed for the Central Republic Trust Company by the Auditor of Public Accounts of the State of Illinois pursuant to section 11 of the Illinois Banking Act (Ill. Rev. Stat. 1937, ch. 16½, par. 11 [Jones Ill. Stats. Ann. 10.11]) and that he has refused, after demand, to institute a suit to recover from the City National Bank and Trust Company of Chicago the value of the good-will of the old bank. That since that time the Reconstruction Finance Corporation has instituted a suit and has obtained judgments against the stockholders of the old bank for their superadded stockholders' liability.

"The decree of the trial court dismissed the complaint and denied leave to file a second amended and supplemental complaint on the grounds that (1) the good-will of the old bank was of no value on October 5 and 6, 1932; (2) that it was transferred to the new bank as part of other transfers; (3) that the transfers were fully executed at the time of the filing of the present suit; (4) that the cause of action of the plaintiffs is exclusively vested in (the receiver appointed by) the Auditor of Public Accounts; (5) that plaintiffs could enforce this cause of action only by appli-

cation to the court in charge of the liquidation; (6) that the plaintiffs are barred by laches, and (7) that the second amended and supplemental complaint is subject to the same defects as the first."

The first question argued in the briefs relates to the finding of the chancellor that the cause of action asserted herein is vested exclusively in the receiver appointed by the auditor of public accounts. Plaintiffs contend that they are entitled to maintain a derivative suit upon showing that the managing agency of the bank has either actually or virtually refused to prosecute the suit; that the receiver is the managing agency of the bank; that the right of the receiver to sue is cumulative and not exclusive; and that the construction placed upon section 11 of the Banking Act by the trial court renders it unconstitutional as depriving plaintiffs of due process of law. Defendants' position is that section 11 of the Banking Act vested title to the alleged cause of action in the receiver and that no cause of action could be brought or maintained except by him or in his name; that the alleged cause of action no longer existed in the old bank (Central Republic Trust Company) after the appointment of the receiver; and that there was, therefore, no derivative right in the plaintiffs to bring this action.

Section 11 of the Banking Act provides, among other things, that:

"Such receiver, under the direction of the Auditor, shall take possession of, and for the purpose of the receivership, the title to the books, records and assets of every description of such bank, and shall proceed to collect all debts, dues and claims belonging to it. . . .

". . .

"Such receiver shall have authority to sue and defend in his own name with respect to the affairs, assets, claims, debts and choses in action of such bank."

Plaintiffs assert that this section merely confers upon an administrative officer the power to do certain

acts therein enumerated or necessarily implied therefrom, and that the remedy thereby afforded to the receiver to enforce claims of the bank is cumulative rather than exclusive. We do not understand that defendants take the position, as stated by plaintiffs, that an unconditional title is vested in the receiver by section 11 of the Banking Act. An unconditional title would imply that the receiver would have the right to appropriate to his own use the assets which came into his hands. Title to the bank's assets is conferred only "for the purpose of the receivership," but for this purpose we think it must be deemed to be exclusive. While authorities of other jurisdictions are in conflict on this question, it is unnecessary to decide on which side of the question lies the greater weight of such authority, inasmuch as sound reason, practical considerations, analogous decisions in Illinois and section 11 itself point clearly to the exclusive character of the receiver's title "for the purpose of the receivership."

This proceeding was originally instituted by Wynnette W. McIlvaine, the owner of two out of one hundred and forty thousand shares of stock of the Central Republic Trust Company, as sole plaintiff. Since the cause of action is one allegedly belonging to said bank, a derivative suit could be maintained, if at all, by a single stockholder or a single creditor who had a pecuniary interest in the result, and any recovery had would inure to the benefit of the creditors in the first instance and, thereafter, to the benefit of all stockholders. The addition of other stockholders or creditors as plaintiffs does not make the suit any more representative or any less derivative. It must stand or fall as a derivative suit. Under the provisions of section 11 of the Illinois Banking Act, any recovery would have to be paid to. the receiver of the bank and, by him, distributed to the creditors and, if any surplus then remained, to the stockholders, and this regardless of whether or not the recovery was had through the

maintenance of the suit by a single stockholder or creditor, or by all of them.

Plaintiffs contend that this suit is brought "to enforce the cause of action of said Central Republic Trust Company." The difficulty with plaintiffs' position in this regard, as we view it, is that the cause of action does not belong to Central Republic Trust Company and, since November 21, 1934, when the receiver was appointed under the provisions of section 11 of the Illinois Banking Act, has not belonged to it. Since said date, the cause of action has belonged to the receiver appointed by the auditor. The principles which underlie derivative suits permit them to be brought when title to a cause of action is in a corporation and its officers and directors wrongfully refuse to bring suit thereon. The receiver of a bank, however, does not step into the shoes of the officers and directors with title to the cause of action remaining in the bank. The Illinois decisions cited by plaintiffs in support of their contention that they are entitled to maintain a derivative suit upon showing that the managing agency of the bank has, either actually or virtually, refused to prosecute the suit, are not bank receivership cases and are inapplicable to the instant question. *Farwell v. Great Western Tel. Co.*, 161 Ill. 522, involved a receivship, but a receiver appointed by a court of equity stands in a different relation to the assets which come into his possession than does a receiver appointed under section 11 of the Banking Act. In *Heffron v. Gage*, 149 Ill. 182, the court said at page 193:

"We have no statute conferring title to property in a receiver who may be appointed by a court, and in the absence of a statute we think it is well settled that the receiver could only acquire title by a conveyance—that the mere order of appointment does not vest title to the property."

Thus an equity receiver is a mere custodian of assets. Title to such assets, including choses in action, re-

mains in the corporation for which the receiver is appointed. There is no extinguishment of the corporation's title. An equity receiver may be said to be the managing agency of the corporation of which he is the receiver but the receiver of a bank under section 11 of the Banking Act is not the bank's managing agency. His duty is to liquidate, not manage. By section 11 of the Banking Act title to assets, including choses in action, is transferred to the receiver. Hence, if a derivative action may be maintained here, it can only be through the development of some new principle which would enable the stockholder to sue derivatively to enforce a cause of action belonging to the receiver. But, as already stated, plaintiffs are seeking to enforce a cause of action which they claim belongs to the Central Republic Trust Company. Their cause of action is, therefore, misconceived and if it is maintainable, it can only be as a derivative suit to enforce a cause of action belonging to or on behalf of the receiver. This is emphasized by the fact that any recovery which might be obtained would have to be paid to the receiver for distribution among the creditors and stockholders. The prayer of plaintiffs' complaint is that a receiver be appointed for the purpose of receiving and disbursing the amount of any recovery that may be had. The court could not thus deprive the receiver appointed by the auditor of the right, title and interest which are vested in him by statute. The inability of a court to appoint a receiver, as prayed by plaintiffs, merely indicates the logic of the view that the alleged cause of action is vested solely in the receiver. Plaintiffs, themselves, in their second amended complaint, which the chancellor denied them leave to file, and in similar paragraphs in their amended complaint, recognize the exclusive right of the receiver to maintain the alleged cause of action. In paragraph 46 of the second amended complaint, they say: ''That it was the duty of said William L. O'Connell, and it was

and is the duty of Charles H. Albers, as receiver of said Central Republic Trust Company, to collect all claims and assets belonging to said bank and to institute appropriate legal action therefor.'' Again in paragraph 55 thereof, they say: ''That so long as the receiver of the Central Republic Trust Company fully performed his duty as such receiver, the officers, directors and stockholders of said bank were deprived of all power and right to control or manage the affairs of said bank, or to institute appropriate proceedings to enforce the claims thereof.''

Plaintiffs, by this last allegation, admit that the exclusive right to institute proceedings to enforce the alleged cause of action was vested in the receiver so long as he performed his duty as such receiver. They leave it to be inferred that by failing to perform his duty the right so vested accrued to the stockholders. We are unable to conceive by what process or operation of law, the right which plaintiffs admit to be vested in the receiver, could, by reason of his alleged neglect of duty, have accrued to them. They apparently seek to make themselves the arbiters of the receiver's alleged neglect of duty. The question whether or not the receiver of the bank ''fully performed his duty'' is one for the determination of a judicial tribunal and not for private interests. The difficulty with plaintiff's theory is that it involves an interference with the administration of the insolvent bank's assets by the receiver before the fact of his alleged neglect of duty has been judicially ascertained. If a stockholder or creditor can make his own determination that a bank receiver has not fully performed his duty, then he may, under the claim of suing derivatively, arrogate to himself the privilege of enforcing any chose in action belonging to the receiver, which the receiver has failed to press to suit.

The Supreme Court of Oklahoma in *Miracle v. Dixon*, 121 Okla. 180, 249 Pac. 153, in holding that the

power, jurisdiction and authority of the State bank commissioner and the State banking board over the affairs of insolvent banks is sole, exclusive and supreme, said at pages 154 and 155 of the last mentioned report:

"The case of *State ex rel. Attorney General v. Norman, supra* [86 Okla. 36, 206 Pac. 522] . . . definitely settles the law in this state that the bank commissioner and banking board has exclusive jurisdiction over the affairs of insolvent banks. Were this not true and every creditor of an insolvent bank permitted to bring suit in his own behalf or on behalf of other creditors of the bank, endless confusion would arise, and the orderly and systematic liquidation of insolvent banks would be rendered impossible."

In so far as we have been able to ascertain the specific question under consideration has not heretofore been presented or decided in this State. *Lane v. Nickerson*, 99 Ill. 284, however, furnishes a close analogy. There it was held that the creditors of the Franklin Bank, which had been declared a bankrupt under the Act of Congress then in effect, could not sue to collect unpaid subscriptions due to the bank since they were a part of the assets of the insolvent bank and passed by a decree in bankruptcy to the assignee and that he, alone, was thereafter the party in whose name suit must have been brought for their collection. That proceeding was a suit as is this, to collect a chose in action—a debt due to the insolvent bank. The suit was not a derivative one, but it is obvious that if it had been, the same principles would apply and the same result would have been reached. Section 11 of the Illinois Banking Act is, to all intents and purposes, a bankruptcy act for the dissolution and liquidation of insolvent State banks. The capacity of the receiver provided for in section 11 is equivalent to that of an assignee or trustee in bankruptcy. There is no essential difference between the principle enunciated

in *Lane v. Nickerson, supra,* and the principle here contended for by the defendants. In support of its conclusion in *Lane v. Nickerson,* the Supreme Court of Illinois cited decisions of the Supreme Court of the United States, the following excerpts from which seem to sustain defendants' position.

In *Sanger v. Upton,* 91 U. S. 56, 23 L. Ed. 220, it is said at page 62 of the first mentioned report:

"The assignee was subrogated to all rights, legal and equitable, of the bankrupt corporation."

In *Trimble v. Woodhead,* 102 U. S. 647, 26 L. Ed. 290, the court said at page 291 of the last mentioned report:

"Nor is the creditor of a bankrupt without remedy in such case as the present. If he is aware of the existence of property or credits, which should rightfully go to the assignee for the benefit of the creditors, he should inform the assignee of all he knows on the subject and request him to proceed, by suit, if necessary, to recover it. If he declines, a petition to the court of original jurisdiction would, if a proper case was made, compel the assignee to proceed."

In *Glenny v. Langdon,* 98 U. S. 20, 25 L. Ed. 43, also cited in the *Lane* case, the court held that the property of a bankrupt is vested by the Bankruptcy Act in the assignee and that creditors can have no remedy to reach property of the bankrupt corporation, except through the assignee and that if the assignee refused to sue, the court having jurisdiction could direct him to proceed. Against the contention that a creditor had a right to bring suit on the theory, among others, that a *cestui que trust* may invoke the aid of equity to give him a remedy when his trustee is guilty of what the law considers a breach of trust, the court held that the creditors had ample means to inform the court of the necessity of any particular proceeding and that the assignee could be compelled to take proper steps to secure the full and complete protection of the rights

of creditors. The court said (98 U. S. 20) at pages 24, 25, 26, 28 and 29:

"What the complainant claims as against the assignee is that he, the assignee, refused to institute the suit, or to allow his name to be used for the purpose. He claims no interest in the property of the bankrupt adverse to the assignee; and if he did, the claim could not be sustained for a moment, as the entire property is transferred to the assignee to be converted into money for distribution. . . .

" 'Debts due' to the bankrupt, *as well as all his rights of action,* vest in the assignee by virtue of the adjudication in bankruptcy, and the appointment of the assignee as the representative of the bankrupt. . . .

"Congress, in framing the Bankrupt Act, it is believed intended to provide instrumentalities for its complete execution, and such as are sufficient to carry it into full effect. . . .

"Authority for a creditor to bring suit to recover the property or rights of property of the bankrupt, under any circumstances, is certainly not given in the Bankrupt Act, nor is any such pretense set up by the complainant.

"Enough has been already remarked to show that the Bankrupt Act makes it the express and positive duty of the assignee to collect and distribute all the assets of the bankrupt, including property fraudulently conveyed prior to the decree of bankruptcy, . . . .

"Neither the assignee nor any creditor can have any greater right under the Bankrupt Act than the act itself confers; . . . for if one creditor may sue in such a case, then all may sue. . . .

"Prima facie the bankrupt is divested of the whole estate, nor have the creditors any right to sue; . . . . " (Itálics ours.)

The asserted right of plaintiffs to bring this suit must be found in section 11 of the Banking Act, either expressly or by necessary implication, and, in our opinion, if the authority is not found there, it does not exist.

We think that the principles enunciated in *Republic Life Ins. Co. v. Swigert,* 135 Ill. 150, provide a guide for the proper determination of the question before us. Under section 1 of the Act of 1874, in regard to the dissolution of insurance companies (par. 103, ch. 73, Hurd's Rev. Stats. of Illinois, 1877), a receiver was appointed for the Republic Life Insurance Company. Section 5 of that act invested receivers with power "to take charge of the estate and effects of the company"; "to collect the debts due, and property belonging to it"; "to prosecute and defend suits in the name of the corporation, or in their own names," and "to do all acts necessary for the collection, marshaling and distributing of the assets of the company." The receiver brought suit against certain stockholders to impeach a lawful and valid transaction between them and the defunct corporation, which took place prior to the receivership, whereby certificates of stock were surrendered to the company in payment of unpaid subscriptions to capital stock. The receiver contended that the transaction was unlawful and void as to creditors and that he had a right to maintain the suit as the representative of the creditors to pay the debts and liabilities of the corporation. The court held that since the transaction was lawful as between the stockholders and the corporation and since the receiver had no greater right to sue than was possessed by the corporation, he could not impeach the transaction; and that this right belonged to the creditors and not to the receiver. Section 5 of the act under consideration in the *Republic* case did not purport to vest title to the prop-

erty of the company in the receiver. It merely made him the custodian thereof and empowered him to collect the debts due the company. The court held that the statute did not enlarge or expand the powers of a receiver beyond the powers possessed by an ordinary receiver in equity. It held, however, that by force of the statute, the receiver was vested with "full and exclusive charge and control, under the direction of the court, of the property rights of the company."

Plaintiffs are here attempting to recover a property right which belonged to the Central Republic Trust Company prior to the receivership. They do not seek to impeach the transaction of October 5, 1932, by which the City National Bank and Trust Company acquired the alleged good will of the old bank, which is the subject matter of this suit. They seek merely to recover what they claim is due to the old bank and for the recovery of which the old bank itself, before the receivership, could maintain a suit. Their action, in essence, is on an implied assumpsit on behalf of the old bank brought in equity and not at law because of its alleged derivative nature. If section 11 of the Banking Act is considered as conferring no greater powers on the receiver than did section 5 of the act under consideration in the *Republic* case, it must nevertheless be held pursuant to the decision in that case that by force of section 11 of the Banking Act the receiver was vested with full and exclusive charge and control of the property rights which belonged to the old bank before the receivership. But we are not limited to that construction of section 11 of the Banking Act. The court in the *Republic* case recognized that the powers of a receiver may be enlarged and expanded by statute to an extent which can make him not only the representative of the corporation whose receiver he is, but as well of the corporation's stockholders and creditors. The receivership herein was created under statutory provisions in which are found expressions similar to those

which the court in the *Republic* case held might be construed as enlarging the powers of an ordinary equity receiver. The clear intent and purpose of section 11 of the Banking Act is to make the receiver not only the representative of the corporation but also the representative of its stockholders and creditors. And this could not well be otherwise. When a receiver takes title and possession of the assets of a bank for the purpose of liquidation, the sole purpose of the receivership is to protect the interests of depositors, other creditors and stockholders. Section 11 of the Banking Act does not merely place the receiver in charge of the estate and effects of the corporation as did the act under consideration in the *Republic* case, but it vests him with title for the purpose of the receivership and divests the bank of all rights, legal and equitable. It empowers him "to do such other things and take such other steps from time to time under the direction and approval of the Auditor as may reasonably appear to be necessary to conserve the trust estate and secure the best interests of the creditors of said bank." It also authorizes him to borrow money and pledge the assets of the bank as security therefor for the purpose of facilitating liquidation, protecting or preserving assets, and "expediting the making of distributions to depositors and other creditors." The act also provides that the creditors of an insolvent bank may have a voice in the selection of the receiver. It is made the duty of the auditor, upon petition of two thirds in number and amount of the creditors, to appoint, as receiver, the nominee of such creditors. Since the receiver in the *Republic* case by force of the statute under which he was appointed had full and exclusive charge and control of the property rights of the Republic Life Insurance Company when the statute did not enlarge or expand his powers beyong those conferred on an ordinary equity receiver, *a fortiori,* the receiver of the Central Republic Trust Company.

was vested by force of section 11 of the Banking Act with full and exclusive charge and control of the property rights of the bank which belonged to it prior to the receivership. Moreover, he was made the representative of the stockholders and creditors for the purpose of litigating all claims due to the bank.

Plaintiffs insist, however, that to so· construe section 11 deprives them of property without due process of law, contrary to the provisions of section 2 of Article II of the Constitution of the State of Illinois and the Fourteenth Amendment to the Constitution of the United States. They argue in substance that the right of stockholders to maintain a derivative suit is a substantial property right; that this right exists at common law; that it cannot be taken away by the legislature; and that existing rights may not be subjected to destruction through the arbitrary action of an administrative official. Normally a cause of action accruing to a corporation is to be enforced by the corporation itself, whether by an action at law or a suit in equity. Stockholders cannot ordinarily maintain a suit to enforce any right of the corporation. There is no common law right in stockholders or creditors to sue derivatively in the name of a corporation. The privilege of maintaining derivative suits has been accorded to stockholders and creditors, whenever the corporation, either actually or virtually, refuses to institute or prosecute a cause of action. Then in order to prevent a failure of justice equity will permit a suit to be brought and maintained by a stockholder or stockholders substituting or subrogating them for the benefit of the corporation to the corporation's right of action. (13 Am. Jur. 504, sec. 461; *City of Chicago v. Cameron*, 120 Ill. 447, 457.) In such cases necessity demands that the suit be maintained derivatively. There is no such necessity when the cause of action has been transferred to or vested in a receiver appointed by authority of law. The receiver is a public officer

and the assets of the insolvent bank, including its choses in action, are in *custodia legis*.

Since the choses in action of a corporation do not belong to its creditors or stockholders and, since the right to maintain a derivative suit under certain circumstances to enforce such choses in action is not a vested right but rather an expedient of the courts of chancery to prevent a failure of justice, the legislature does not deprive a stockholder or a creditor of property without due process of law by vesting in a receiver the exclusive right to enforce a cause of action previously possessed by the insolvent bank. The stockholders and creditors cannot be deprived of that which they never, as of right, possessed. No attempt is made by section 11 to deprive stockholders and creditors of their beneficial interest in the assets and choses in action which come into the possession of the receiver. Since plaintiffs have not and never had title to the alleged cause of action, they can claim no vested right in any remedial procedure to enforce the cause of action and the remedy to enforce it may be vested in the receiver or in the auditor of public accounts just as the remedy to enforce stockholders' liability (in the absence of rights conferred on creditors by the constitution) may be vested exclusively in a receiver, auditor or other official (*Kingston v. Old National Bank of Centralia,* 359 Ill. 192, 197, 201).

In the *Kingston* case suit was brought by the commissioner of banking for the State of Wisconsin to collect stockholders' liability due from an Illinois resident under the provisions of the Wisconsin statutes (Wis. Stat. 1931, sec. 220.04 (3), 221.42 as amended in 1915), which vested exclusively in the hands of the commissioner of banks the enforcement of stockholders' liability. A different act was in effect at the time the Illinois resident became a stockholder and it was contended that the act under which the commissioner brought suit impaired the obligation of contract and

denied due process of law. The court held that the provisions of the banking statute were a part of the charter granted to the bank and constituted a contract between the stockholders and the State by virtue of which the stockholders became subject to the terms of the statute imposing the superadded liability and to then existing procedural methods concerning the enforcement of such liability, as well as any future procedure for the enforcement of such liability as the Legislature of Wisconsin might impose by statute. The court also held that no person has a vested right in any remedial procedure, but that such method may be changed, altered or modified at the legislative will so long only as such change does not impair the obligation of contract. The court declared that the act in question was designed to provide an ample and expeditious procedure for the collection of the stockholders' liability and to liquidate more rapidly the bank's liabilities. So, in the instant case, section 11 of the Illinois Banking Act, constituted a contract between the stockholders and the State. Creditors also dealt with the bank subject to the terms of section 11. Central Republic Trust Company was organized July 25, 1931, and the relevant portions of section 11, heretofore set forth, have been in effect since 1929. The relations of plaintiffs to the old bank were subject at all times to the terms and provisions of section 11 and the remedial procedure therein prescribed.

Plaintiffs' contention that section 11 is unconstitutional as construed by the trial court is further answered by the implications to be drawn from the *Kingston* case. It will be observed that the statute there in question vested the exclusive right to enforce payment of stockholders' liability in the commissioner of banks.

A similar statute enacted in Illinois, that is, one which attempted to authorize the receiver, under the Banking Act as it then existed, to enforce the liability

of stockholders to creditors was held unconstitutional in *Golden v. Cervenka,* 278 Ill. 409. There the court said at page 436:

"If the liability of stockholders to creditors were imposed by the statute the legislature might provide for the manner in which such statutory liability should be enforced, and might authorize the Auditor, or the receiver appointed in the Auditor's suit, to enforce such liability and to control the proceedings for that purpose. The rights of the creditors in such case being statutory, would be subject to such terms as the legislature might impose, but the creditors' rights in this case being constitutional, cannot be restricted by terms imposed by the legislature."

In the instant case the claimed rights of plaintiffs are not constitutional. They contracted with the old bank subject to the terms and provisions imposed by the legislature in section 11 of the Banking Act. Their privilege of suing derivatively could be and was restricted by the terms of the statute. The *Kingston* case recognizes that the liability imposed upon stockholders for the benefit of creditors may be enforced exclusively by a State agency in the absence of constitutional restrictions. In our opinion the asserted rights of plaintiffs may likewise be enforced exclusively by the receiver since there are no constitutional provisions in this State to forbid it.

Plaintiffs urge that *People v. Waukegan State Bank,* 351 Ill. 548, and *People v. Marion Trust & Savings Bank,* 347 Ill. 445, expressly hold that priority rights of bank creditors survive the appointment of a receiver and are not extinguished by his taking of "title to the bank assets." We think these cases are inapplicable. They involve the prerogative right of the sovereign to preference and merely hold that the assets of an insolvent bank, title to which is vested in the receiver by section 11, remain subject to the same liabilities, in so far as the State is concerned,

as existed before the transfer of title. Plaintiffs claim that in *Elkin v. Diversey Trust & Savings Bank,* 363 Ill. 160, 163, the court held that a similar remedy created by the Banking Act is cumulative rather than exclusive and quote therefrom as follows: " . . . the only effect of the amendment of 1929 to section 11 was to give a cumulative rather than an exclusive remedy." This case did not involve the right of the receiver to sue—only the right of creditors to enforce stockholders' liability independently of the conditions prescribed in section 11. There is no similarity between the question there involved and the one here presented. In our opinion the trial court did not err in holding that the cause of action alleged herein was vested exclusively in the receiver and there is no merit in plaintiffs' contention that section 11 of the Banking Act so construed would render it unconstitutional.

Defendants insist that even if title to the alleged cause of action were not vested exclusively in the receiver, plaintiffs are barred from maintaining this action because, as appears from their complaint, they did not apply to the court in charge of the liquidation for leave to sue on behalf of the receiver or for an order requiring him to sue. This question is argued at length in the briefs of both plaintiffs and defendants. As heretofore set forth it is fundamental that before a stockholder can maintain a derivative suit in cases where there is no receivership, such stockholder must exhaust his remedies within the corporation. Ordinarily this requires, among other things, that he shall make demand on the managing officers to sue on the cause of action, the existence of which he asserts. When a corporation is in receivership, the stockholder must likewise show a demand upon the receiver and the weight of authority is to the effect that in such case he may not bring a suit on behalf of the corporation without the permission of the court

which appointed the receiver, even though the court has refused his application to have the receiver prosecute the claim. (13 Am. Jur. 513, sec. 470.)

In *Richards v. People,* 81 Ill. 551, it was held that an equity receiver was alone lawfully entitled to the credits of the corporation, of which he was appointed receiver, and that a creditor of the corporation, who sought to sue in garnishment on a chose in action belonging to the corporation, was guilty of directly interfering with and impeding the court in its administration of the estate over which it had appointed its receiver. (*Kneisel v. Ursus Motor Co.,* 316 Ill. 336, 342, and cases there cited.)

Plaintiffs argue, however, that this well-established principle has no application to a derivative suit by a stockholder of an insolvent corporation in the hands of a receiver appointed by the court and cite *Farwell v. Great Western Tel. Co.,* 161 Ill. 522, as supporting their contention. A derivative suit by a stockholder is not essentially different from a suit in garnishment, such as was before the court in *Richards v. People, supra.* We do not believe that the *Farwell* case holds contrary to the principle under consideration. The opinion filed in the *Farwell* case is quite long, consisting of nearly 100 pages, and careful consideration and analysis of same discloses that the case is inapplicable for several reasons: (a) the stockholders' suit, while representative, was not derivative; (b) it was a representative suit in the nature of a bill of review primarily brought to relieve stockholders of a personal liability imposed by court orders fraudulently procured, which, by reason of the lapse of time, could not otherwise be rendered unenforcible; (c) the suit was instituted not only to relieve the stockholders of a liability fraudulently imposed, but to seek redress against the president of the company and others for official neglect and mismanagement; (d) such further relief as was prayed

and which more properly might have been sought by the receiver, was merely ancillary or incidental to the primary relief sought; (e) the receiver himself was a coconspirator to the fraud perpetrated upon the stockholders; (f) the suit was filed in the *receivership court* and was, therefore, tantamount to an application by the stockholders for leave to bring the suit, and so the court held; and (g) leave was granted to make the receiver a party defendant to the bill.

There is very little conflict of authority when the receiver is an appointee of a court, either under its broad chancery powers or by force of some special statute, on the question of the necessity of a stockholder or creditor of an insolvent corporation making application to the court in charge of the liquidation for leave to sue on behalf of the receiver or for an order requiring him to sue. However there is considerable conflict of authority in cases such as this where the receiver is appointed by a nonjudicial officer of the State, either under statutes which provide for court supervision of liquidation proceedings, or which clothe the receiver with full discretionary power without the control of any court. It would serve no useful purpose to review the authorities of other jurisdictions on both sides of this question since the courts of review of this State, pursuing a course of sound public policy in cases where a bank receiver seeks the aid of a court of chancery in the administration of his trust and thereby submits himself and his estate to the jurisdiction of the court, have so construed section 11 of the Banking Act as to clothe such receiver with the rights, obligations and incidents of a receiver who owes his appointment to the court. (*People v. West Side Trust & Savings Bank,* 362 Ill. 607; *People ex rel. Barrett v. Fon du Lac State Bank,* 309 Ill. App. 139, 33 N. E. (2d) 144; *Chicago Title & Trust Co. v. Goldman,* 272 Ill. App. 457; *People ex rel. Nelson v. Ottawa Bank & Trust Co.,* 287 Ill. App. 499; *People ex rel. Barrett v.*

*Central Republic Trust Co.,* 290 Ill. App. 183; *Little v. Chicago National Life Ins. Co.,* 289 Ill. App. 433; *Miller v. Central Mutual Ins. Co.,* 299 Ill. App. 194.) The receiver under section 11 of the Banking Act is a quasi judicial officer appointed by an executive officer of the State and in the performance of the duties imposed upon him he exercises the functions of the State. When he applies to an officer of the judicial department for aid in carrying out these functions as he, through the auditor of public accounts has the right to do under the statute, thereby placing a court in "charge of the liquidation," sound public policy demands that he should have co-operation, protection and security from interference to a like extent as though he were appointed by the court.

Plaintiffs assert that the precise question now under consideration has been determined adversely to the contention of the defendants. They cite *Bride v. Stormer,* 368 Ill. 524, and state that in that case the Supreme Court held that the court entertaining the dissolution suit did not have exclusive jurisdiction of the bank's assets and that a suit involving an asset of the bank could be brought elsewhere without the consent of any court. That case involved a foreclosure proceeding wherein a deficiency decree was sought against the receiver of a closed bank which, by virtue of a resulting trust, was the owner of the land conveyed as security by the trust deed. The bank too was the real maker of the notes which had been executed by its nominee. The receiver contended that he could be sued only in the court having charge of the liquidation. The court cited the statute which gave him the right to sue and defend and said that he, therefore, could be sued without the consent of any court. The question there decided was entirely dissimilar to the one here presented. It was not held in that case that the court entertaining the dissolution suit did not have exclusive jurisdiction of the bank's assets. In

fact, no asset of the bank was there involved. Only a liability was involved.

The doctrine of "failure of justice" is inapplicable to the present situation as a remedy exists in a stockholder or creditor to apply to the court having supervision of the receivership to compel the receiver to sue or to permit suit in the name of the receiver. It appears from plaintiffs' complaint that when this suit was instituted, there was pending in the circuit court of Cook county liquidation proceedings brought by the receiver for the dissolution of the Central Republic Trust Company. Thus the receiver brought himself and his trust estate under the judicial supervision of a court of equity. (*People v. West Side Trust & Savings Bank, supra; Miller v. Central Mutual Ins. Co., supra.*) The situation presented herein does not require the determination of the question as to what remedy would exist for stockholders or creditors if there had been no court supervision of the receivership at the time of the filing of the complaint.

Neither the cause of action nor the right to enforce it ever vested in the stockholders or creditors. The privilege of suing derivatively is not accorded until the stockholders or creditors exhaust their remedies within the corporation. No demand was ever made by the creditors or by the stockholders for that matter other than those demands made by plaintiff McIlvaine on May 1, 1937 and May 8, 1937 respectively. The demand on the board of directors of the Central Republic Trust Company made May 8, 1937 came too late as title to the assets, including all choses in action, was then and had been since November 21, 1934, vested in the receiver appointed by the auditor.

Nor can plaintiffs maintain this action on the theory that a stockholder is a *cestui que trust,* having a beneficial interest in a cause of action possessed by his trustee. (*Glenny v. Langdon, supra.*) The receiver is, of course, a trustee, but he is not a private trustee

but a public one, vested by statute like an assignee or trustee in bankruptcy with the right to collect all debts and claims belonging to the insolvent bank, and, because of his public character and the intent and purpose of section 11, this right is exclusive.

Moreover, there is no allegation in plaintiffs' complaint that they made demand upon the auditor of public accounts to have him require the receiver to bring suit. The rule that a stockholder must exhaust his remedies within the corporation before he can maintain a derivative suit requires not only that he make demand on the directors, but that in case of their refusal, he must resort to the stockholders as a body unless he shows that such appeal would be useless. (14 C. J. 931, 933, 13 Am. Jur. 508, sec. 464; *Goldberg v. Ball,* 305 Ill. App. 273.) It would seem that this rule likewise made it the duty of plaintiffs to make demand upon the auditor of public accounts that he direct the receiver to institute the suit unless the complaint shows that such an appeal would be useless. Section 11 of the Banking Act repeatedly provides that the receiver is under the direction of the auditor. There is no attempt to show except by way of certain alleged conclusions that if such demand had been made upon the auditor, it would have been unavailing. The allegations in plaintiffs' complaint that the auditor neglected to place the old bank in receivership and that his delay in so doing enabled the City National Bank and Trust Company to acquire the business and good will of the Central Republic Trust Company are insufficient to show that after a receiver had been appointed, the auditor of public accounts would have refused a demand if one had been made.

The subject matter of plaintiffs' suit is the value of the good will of the Central Republic Trust Company, which they allege was acquired by the City National Bank and Trust Company on and after October 5, 1932, without the payment of any consideration there-

for. Defendants contend and the trial court found that the good will of the old bank on October 5, 1932, was nonexistent and without value and that if there was anything of good will, it was transferred to the City National Bank and Trust Company on October 5, 1932, as part of the transaction of that date. Plaintiffs allege in the second amended complaint sought to be filed that the good will was ''appropriated'' by the City National Bank and Trust Company and not transferred as part and parcel of the transaction complained of. While good will is, in its nature, intangible, it is a species of property but it is not susceptible of separation from or of being disposed of independently of that in which it inheres— namely, the business or the assets thereof. It can, therefore, have no existence as property in and of itself, as a separate and distinct entity, but only as an incident of a continuing business having locality or name. (24 Am. Jur. 804, sec. 4, and p. 809, sec. 12.) Since it is not capable of being bought, sold or otherwise transferred, except in connection with a business as an incident thereof, it cannot be appropriated unless the business or assets in which it inheres are appropriated. Plaintiffs do not claim that the business and assets of the old bank were appropriated and if they were not, it is difficult to conceive how good will, which is not susceptible of separation from the business and assets, could be appropriated. Whatever good will existed in the Central Republic Trust Company on October 5, 1932, was primarily and essentially inherent in the deposits. Such is the very nature of the banking business. When the deposits were transferred to the City National Bank and Trust Company and the deposit liability assumed by it on October 5, 1932, the good will, if any, which inhered in them was also transferred. Plaintiffs' exhibit F, a letter from the board of directors of the Central Republic Bank and Trust Company to its stockholders, attached to

their several complaints, clearly informed them that "the deposits of Central Republic Bank and Trust Company have been taken over and assumed by City National Bank and Trust Company of Chicago, a newly formed bank." They were thereby charged with knowledge that the good will of the old bank which inhered in these deposits was transferred to the new bank. The good will of the old bank, if any, passed as part and parcel of the completed and fully executed transaction as found by the trial court. If a sufficient consideration supported the transfer of the deposits, it likewise supported the transfer of the good will. It is unnecessary, however, to determine the sufficiency of the consideration as it is apparent from plaintiffs' several complaints that the alleged good will of the old bank was, on October 5, 1932, without value.

Plaintiffs have summarized in their reply brief the allegations which disclose the financial condition of the old bank at the time of the transaction complained of, as follows:

"CONDITION OF CENTRAL REPUBLIC BANK ON
OCTOBER 6, 1932.

Resources including cash means of more
   than $22,000,000 ................... $139,000,000
Cash received from R. F. C............. 50,000,000
                                  $189,000,000

LIABILITIES.

Deposits .......................... 72,330,629
Other liabilities (including R. F. C. loan,
   Capital and surplus)............... 116,669,370
                                  $189,000,000"

Other allegations of the complaints show that at the time of the filing of the original complaint, approximately 4½ years after the transaction in question, the resources, other than cash, were $50,000,000, and the liabilities of the bank, other than deposit liabilities

(which had been transferred) were approximately $50,000,000. If the cash means are deducted from the resources set out in appellants' tabulation and are added to the $50,000,000 received from the Reconstruction Finance Corporation and the total thus obtained, in the amount of approximately $72,000,000, is written off against the deposit liabilities, also of approximately $72,000,000, and the liability to the Reconstruction Finance Corporation and other banks alone is considered, appellants' tabulation would show: Resources (other than cash) $117,000,000; Liabilities $95,000,000. Dividing $117,000,000 into $95,000,000 produces a percentage of .812, indicating that in order to be solvent the resources of the bank must liquidate at 81.2 per cent. As heretofore stated, at the time the original complaint was filed in May, 1937, $50,000,000 of assets remained and $50,000,000 of liabilities, thus indicating that resources in the amount of $67,000,000 had been liquidated to pay $45,000,000 of liabilities, leaving a liability remaining of $50,000,000. Dividing $67,000,-000 into $45,000,000 produces a percentage of .671, indicating that the resources of the old bank on October 5, 1932, did not have a value in excess of 67 per cent. It thus appears that the percentage of loss in liquidating the resources was approximately one third the stated value of the resources or approximately $39,000,-000, leaving an actual value to the resources of $78,-000,000 or $17,000,000 short of being sufficient to pay the $95,000,000 debt. The capital stock of the old bank is alleged to be $14,000,000, and, if the stockholders' liability were collected in full, the assets would still be $3,000,000 short of being sufficient to pay the $95,-000,000 debt. This calculation does not take into consideration the well-known fact, of which the court will take judicial notice (*Reif v. Barrett*, 355 Ill. 104, 132; *State ex rel. Zimmerman v. Gibbes*, 171 S. C. 209, 172 S. E. 130, 134), that the best assets and the ones more rapidly liquidated bring a higher value, while the

slower assets bring a comparably lesser value. Other and different calculations may be made from divers paragraphs of the complaint but all such computations, measured by the results of the liquidation at the time the original complaint was filed, indicate that the assets of the bank were insufficient by from $17,000,000 to $21,000,000 to meet the bank's liabilities on October 5, 1932, and for several months prior thereto. Since the bank was a financial failure at the time of the transaction complained of, there was no value in the good will which was transferred to the City National Bank and Trust Company. (*Ahlenius v. Bunn & Humphreys, Inc.*, 358 Ill. 155, and cases cited therein; *Farwell v. Huling*, 132 Ill. 112, 119; *Chicago Title & Trust Co. v. Central Trust Co.*, 312 Ill. 396, 514; *Securities Realization Co. v. Peabody & Co.*, 300 Ill. App. 156.)

When a bank becomes insolvent it is bound in the very nature of things to lose the good will of its depositors once the fact of its insolvency is known. Unlike other commercial institutions which may be insolvent, a bank cannot be sold. Once insolvent the statute makes it the duty of the auditor to liquidate it. Whether or not the auditor of public accounts was derelict in his duty in not taking possession of the bank on or about October 6, 1932, or prior thereto is beside the question. The fact that the old bank was able to meet its current obligations on October 6, 1932, does not mean that it was not insolvent. Its current obligations were its deposit liabilities. It could not pay these and also the indebtedness due the Reconstruction Finance Corporation. It is apparent from the complaint that if the Reconstruction Finance Corporation had not made the loan in question, the Central Republic Trust Company would have been placed in liquidation by the auditor long before October 6, 1932. It is equally clear that if the Reconstruction Finance Corporation had not freed the cash wherewith to pay deposits from the obligation due to it, the old

bank would soon have been in receivership. If the transaction in question had not taken place, the cash which was transferred to the new bank would, of course, have remained with the old bank and it would then have been subject to the claims of the Reconstruction Finance Corporation along with the other resources. The Reconstruction Finance Corporation, in the enforcement of the obligation due it, would have shared in the cash means pro rata with the depositors and to their detriment. It would have been altogether unlikely and improbable to expect the depositors to refrain from withdrawing their accounts if the cash means wherewith to pay the deposits had not been freed of the obligation due to the Reconstruction Finance Corporation. If, therefore, the City National Bank and Trust Company received something for nothing as contended by plaintiffs, it received it from the Reconstruction Finance Corporation and not from the old bank. Whatever value attached to good will after it was transferred to the City National Bank and Trust Company was the result of the generosity of the Reconstruction Finance Corporation in freeing the deposits of the obligation due to it by means of and through the transaction now complained of. This value was further enhanced by the fact that the City National Bank and Trust Company started business with new capital and surplus amounting to $5,000,000.

Plaintiffs claim that the trial court erred in holding that they were barred by laches, acquiescence and estoppel. They raise this contention primarily upon allegations in the complaint to the effect that until the trial of the stockholders' liability suit in 1936, they had no knowledge of the facts involved and particularly of the "appropriation" of good will. This allegation, however, is refuted by exhibit F attached to the complaint which has been heretofore referred to. As already indicated good will was inherent in the deposits and the stockholders were advised that the de-

posits had been turned over and assumed by the City National Bank & Trust Company. They were, therefore, charged with knowledge that the good will was part and parcel of the transaction. It is clear from the complaint that plaintiffs awaited the outcome of the stockholders' liability suit in the Federal Court. If the resources of the old bank had been sufficient to pay the Reconstruction Finance Corporation loan or, if no attempt had been made to enforce the stockholders' liability, in our opinion the present action would not have been brought. This plaintiffs practically concede. In their brief they say that if the assurance in exhibit F had been true, there might be little cause for complaint. The assurance relied on appears to be the suggestion that stockholders' liability might be avoided by the transaction in question. If plaintiffs had a cause of action for the value of good will, they had it on October 6, 1932 and thereafter and it existed, if at all, independently of stockholders' liability. The decree of May 1937, in the United States District Court, which adjudged that plaintiff stockholders were indebted to the Reconstruction Finance Corporation because of stockholders' liability, was the factor which prompted appellants to commence this suit and not the desire to prevent the alleged unjust enrichment of the City National Bank and Trust Company. That is the tenor of plaintiff McIlvaine's letter to the receiver on May 1, 1937, demanding that suit be instituted. His letter commences with the statement that, "As one of the stockholders of the Central Republic Trust Company, I am anxious to avoid double liability which it now seems certain will be assessed in the suit pending in the Federal Court." Under all the circumstances of this case it must be held that plaintiffs acquiesced in the transaction in the hope and belief that they would be relieved of stockholders' liability. No positive assurance could be given to them that they would be relieved of this

liability. They were bound to know that if the resources of the bank were not sufficient on liquidation to pay the obligations due the Reconstruction Finance Corporation, they might then have enforced against them stockholders' liability. It is clear, therefore, that they acquiesced in the transaction and waited in the hope that it would result in relieving them of stockholders' liability. Laches and estoppel are inseparably interwoven with long acquiescence when no fraud is shown. The trial court, therefore, did not err in holding that appellants were barred by laches, acquiescence and estoppel. (*Bush v. Sherman,* 80 Ill. 160, 175; *Hoyt v. Pawtucket Inst. for Savings,* 110 Ill. 390, 399; *Jackson v. Anderson,* 355 Ill. 550, 557; *St. Paul S. & T. F. Ry. Co. v. Sage,* 49 Fed. 315, 325; *Coquard v. National Linseed Oil Co.,* 171 Ill. 480, 484.)

It appears from the complaint and from what has heretofore been said that plaintiffs have no pecuniary interest in the event a recovery could be had. This is certainly true of the stockholders and the creditor-plaintiffs are in no position to complain as they never made a demand for the institution of suit upon the directors of the bank or the receiver or auditor. Whatever recovery could be had would inure to the benefit of the Reconstruction Finance Corporation and not to the stockholders.

Other points have been urged and considered but in the view we take of this case we think further discussion would only serve to further lengthen this already long opinion.

For the reasons stated herein the decree of the superior court dismissing plaintiffs' amended and supplemental complaint and denying them leave to file a second amended and supplemental complaint is affirmed.

*Decree affirmed.*

SCANLAN, P. J., and FRIEND, J., concur.