Elsie C. WIPER, Executrix of the Estate
of Joseph W. Wiper, Deceased,
Plaintiff-Appellant,

v.

ERIE SAND STEAMSHIP CO.,
Defendant-Appellee.

No. 329, Docket 26409.

United States Court of Appeals
Second Circuit.

Argued April 17, 1961.

Decided Aug. 9, 1961.

Victor G. Hanson, Detroit, Mich.
(Harvey Goldstein (of Goldstein & Ster-
enfeld), New York City, on the brief),
for plaintiff-appellant.

Fenton F. Harrison, Buffalo, N. Y.
(Coffey, Heffernan & Harrison, Buffalo,
N. Y., on the brief), for defendant-appel-
lee.

Before WATERMAN, MOORE and
SMITH, Circuit Judges.

MOORE, Circuit Judge.

Plaintiff, executrix of the estate of
Joseph W. Wiper, brought this action
pursuant to the Jones Act (46 U.S.C.A.
§ 688) to recover damages resulting from
the death of her husband allegedly caused
by the negligence of the defendant or the
unseaworthiness of defendant's vessel,
the M/V "Hydro" (Hydro). The jury
returned a verdict for the defendant, and
from the judgment entered thereon,
plaintiff appeals. The appeal is based
primarily on contentions (1) that the
trial court erroneously refused to submit
to the jury certain instructions request-
ed by plaintiff and (2) that that court

erroneously charged that the condition of the dock area could not be attributed to defendant. Appellant also urges that the captain of the "Hydro" was under an affirmative duty to detain Wiper on board because of indications that Wiper had been drinking.

On September 15, 1958, the Hydro was being repaired in a slip adjoining the Detroit River, Detroit, Michigan, at a dock owned and operated by the Great Lakes Engineering Works (Great Lakes). The repair work was being performed by Great Lakes. On the afternoon of the 15th, Wiper, acting Chief Engineer of the Hydro, had been drinking, and defendant's Marine Superintendent stated that between 4:00 and 5:00 p. m. he ordered Wiper to "get himself straightened out and get some sleep." At approximately 8:00 p. m., an employee of Great Lakes asked McLaughlin, an oiler on the Hydro, to obtain an oil seal for a thrust bearing needed in the repair of the ship's machinery. McLaughlin, searching for Wiper, found him asleep. After having been awakened by McLaughlin, Wiper dressed in street clothes and announced that he would go ashore to the Great Lakes' machine shop to check on the missing part. The captain of the Hydro met Wiper on deck, and after noting the heaviness of Wiper's speech and the odor of alcohol on his breath, asked Wiper not to go ashore. Disregarding this request, Wiper proceeded along the deck, descended the ship's ladder, proceeded on shore away from the ship, recognized a fellow member of the crew who was returning to the ship, and was observed as walking without stagger or assistance. His body was found in the slip on September 19, 1958. An autopsy revealed that the date of death was September 16th; that the cause of death was "asphyxia by drowning"; and that Wiper's blood alcohol content was .35%—an amount which, according to an expert called by defendant, would have produced such a stuporous or nearly comatose state that an individual would need assistance in such simple acts as dressing and walking.

The issues of negligence and unseaworthiness were submitted to the jury on the basis of conflicting evidence concerning the condition of the ladders used for boarding and leaving the Hydro. On this appeal plaintiff does not challenge the sufficiency of the evidence to support defendant's verdict, but as stated claims that the trial judge erred in refusing to charge certain of the submitted requests.

A comparison of these requests with the actual charge given leads to the conclusion that no error was committed. Request No. 15 was to the effect that "the words 'in the course of his employment' as used in the Jones Act is [sic] not restricted to death or injury occurring on navigable waters but may include injuries or death occurring while returning to the vessel, providing the accident happened while in the performance of his duties of employment." The judge charged that "it would not matter that the death occurred while he [Wiper] was not on the 'Hydro' itself." Requests 19, 22 and 23 all concerned the shipowner's liability when an accident is partially caused by his negligence and partially by factors for which it was not responsible. The judge fully and properly explained to the jury that a verdict for plaintiff was required if defendant's negligence or the unseaworthiness of the Hydro caused "in whole or in part" Wiper's death. Request No. 28 dealt with the non-delegable duty of a shipowner to provide the crew with a safe place to work. The charge specifically referred to this well settled rule of law. Request No. 31 was partially a restatement of Request No. 28 and also stated that "a shipowner may not abandon his ship nor its responsibility." This aspect of the charge was clearly inapplicable, there being no issue in the case as to the shipowner's having abandoned its duties.

There is no merit to plaintiff's contention that the purpose of the above requests was "to place before the jury the proposition that the condition of and on the dock immediately adjacent to the vessel was the shipowner's responsibil-

ity." Irrespective of the merits of this proposition, these requests, which were nothing more than general statements of established rules of law, were clearly insufficient to point up such a theory. Moreover, such a purpose cannot be assumed because no objection was interposed to that portion of the charge which stated that defendant was not responsible for any unsafe condition on the dock. Nor was objection made when, at the conclusion of the charge, the judge again charged at defendant's request, that defendant "is not to be charged with negligence for any failure of any condition on the dock."

■ Plaintiff's contentions concerning the above requests thus boil down to the proposition that the trial judge did not charge in the exact words of the various requests—a proposition not supported by the law. Halecki v. United New York and New Jersey Sandy Hook Pilots Association, 2 Cir., 1960, 282 F.2d 137, 140, certiorari denied 1961, 364 U.S. 941, 81 S.Ct. 459, 461, 5 L.Ed.2d 372.

■■ Plaintiff also argues that the trial judge erred in not charging that defendant could be held liable on the theory that it was negligent to allow Wiper to go ashore when he was in a drunken condition. This argument must fail for two reasons. First, plaintiff never requested that such a theory be charged; the two requests [1] which are referred to as having raised this issue are so vague, ambiguous and conclusory as to not even suggest this theory. Secondly, the claim that Wiper should have been detained is refuted by the facts. Wiper was a mature (age 51) experienced seaman, holding a responsible position on the ship. He was not ordered to go ashore—in fact, the captain actually requested that he not do so. The amount of alcohol in Wiper's blood at the autopsy indicates that he must have done considerable drinking after leaving the Hydro, because there was no evidence introduced that, at the time he left the ship, he was in the condition which .35% alcohol content would have produced according to medical testimony. On the contrary, witnesses testified that they saw him able to get dressed and proceed safely away from the ship. Whatever the "parental" duty of a ship's captain may be, it surely does not require him to forcibly detain every crew member who has had a few drinks or who wishes to go ashore to do a bit of drinking for relaxation.

Judgment affirmed.

[1.] These requests to charge are as follows:
"11. The shipowner owes the duty of due diligence to save a member of a crew, who, even by his own neglect places himself in danger. Harris v. Pennsylvania R. Co. [4 Cir.], 50 F.2d 866."
"21. The relationship of a ship captain to his crew is traditionally parental, and he is the crew's legal guardian in the sense that it is a part of his duty to look out for their safety and care whether they make a distinct request for it or not. Monteiro v. Paco Tankers [D.C.], 93 F. Supp. 93; Potter Title & Trust Co. v. Ohio Barge Line [3 Cir], 184 F.2d 432, certiorari denied [340 U.S. 955], 71 S.Ct. 567 [95 L.Ed. 689]."