Eileen K. BYRNE, Executrix of the Estate of Maurice C. Byrne, etc., Plaintiff-Appellee,

v.

SHELL OIL COMPANY, Defendant-Appellant.

No. 13311.

United States Court of Appeals Seventh Circuit.

Oct. 16, 1961.

Rehearing Denied Dec. 12, 1961.

Irving Slifkin, New York City, Owen Rall and Herbert C. Loth, Jr., Chicago, Ill. (Timothy I. McKnight and Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill., of counsel), for appellant.

John J. Yowell, G. Kent Yowell and William R. Yowell, Chicago, Ill. (Yowell, Long, Macdonald & Yowell, Chicago, Ill., of counsel), for appellee.

Before DUFFY, KNOCH, and KILEY, Circuit Judges.

KILEY, Circuit Judge.

This diversity suit for damages is based upon allegations of a breach by Shell Oil Company of an oral contract to purchase advertising devices designed, and to be manufactured, by the plaintiff's decedent. Verdict and judgment were in plaintiff's favor for $46,200. Shell has appealed.

R. L. Williams, sales promotion advertising representative for Shell in its Chicago Division, was directed by superiors to begin the development of an "animated motor oil window display" unit to promote the sale of Shell motor oil. In August or September of 1954 Williams discussed the idea with decedent Maurice H. Byrne. With the aid of Williams, Byrne developed the design, and later prepared a model which he submitted to Williams and other Chicago Division executives in November, 1954. In May, 1955, Byrne submitted quotations of quantities and prices to Williams. The model was changed somewhat and when it was satisfactory to Williams he communicated with Mr. William Thompson, supervisor of sales promotion advertising in Shell's New York "Head Office".

On June 28, 1955, Thompson, Williams, and Byrne met in Chicago. They discussed the details of the display and reached an understanding about the conduct of the parties with respect to the display. Thereafter, at Shell's request and expense, the model was changed from time to time. On November 28, 1956, Shell ordered 100 displays, and on January 29, 1957, Williams "approved" the display in writing. On March 28, 1957, Shell wrote its eighteen division managers, advising that a display was being shipped to each, to be observed for a period of thirty to sixty days, and asked for comments. On December 20, 1957, Thompson wrote each manager requesting his estimate of the number of displays that his dealers would buy. He asked for a reply by December 31, and set February 15, 1958 as the deadline for orders. On January 13, 1958, Thompson wrote the division managers that "it had been decided to abandon the project". This suit was filed about a month later.

■ The first question in this court is whether the trial court erred in denying Shell's motion to dismiss on the ground that plaintiff is not the real party in interest. It cites Brodsky v. Frank, 1930, 342 Ill. 110, 173 N.E. 775, 777 and refers to McIlvaine v. City National Bank & Trust Co., 1942, 314 Ill.App. 496, 512, 42 N.E.2d 93 in support of its claim. There is dictum, but not decision, on this point in Brodsky, and the statement in McIlvaine at page 512 of 314 Ill.App., at page 102 of 42 N.E.2d, is qualified by the word "normally". Shell argues that if a contract was made it was with Maurice H. Byrne Company, Inc. We think Shell dealt with Byrne as an individual. He was virtually sole owner of the stock, and Shell knew or should have known this fact. There is no showing that Shell was misled in any way to its prejudice. We find no error in the court's ruling. Earp v. Schmitz, 1948, 334 Ill.App. 382, 79 N.E. 2d 637.

■■ The jury, in a special verdict on the main factual issue at the trial, found that the understanding reached by Thompson, Williams, and Byrne in Chica-

go on June 28, 1955, constituted an oral contract under which Shell was bound to purchase the displays. The main issue in this court is whether the trial court erred in submitting this question to the jury. In deciding this issue we take as true the evidence favorable to the plaintiff and draw inferences most strongly in her favor. Hepburn v. Dubois, 1838, 37 U.S. 344, 375, 9 L.Ed. 1111; Tennant v. Peoria & P. U. Ry. Co., 1944, 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520; Falstaff Brewing Corp. v. Thompson, 8 Cir., 1939, 101 F.2d 301, 303. We disregard unfavorable testimony, and inferences and arguments based on that testimony. Under these rules we think the record contains enough substantial evidence to sustain the verdict.

The jury could have found that on June 28, 1955, Byrne, Williams, and Thompson reached a meeting of the minds; that Byrne exchanged his promise to forbear submitting the model to Shell's competitors for Shell's promise to purchase its "requirements" of the displays at a reasonable price when the model, essentially acceptable, was changed in some respects. It could reasonably have found further that Shell understood its obligation and implemented its undertaking by paying for changes in the model, establishing its "minimum" requirements at 1,000 displays, accepting as reasonable the price of approximately $35.00 per unit. The jury could reasonably have also found that the parties understood the displays would be shipped ten to twelve weeks after orders, and were intended for one year's promotion package.

■■ These findings would comprise the elements of the contract. Byrne's detriment in not submitting the model to Shell's competitors was evidence of consideration. Ramey Lumber Co. v. John Schroeder Lumber Co., 7 Cir., 1916, 237 F. 39, 43; Williston, Contracts, § 135 (3d ed. 1957). This being a "requirements contract", the element of quantity was satisfied by the imprecise understanding that Shell would buy what its dealers required, and by the provision of a method for determining the require-

ments. Laveson v. Warner Mfg. Corp., D.C.D.N.J.1953, 117 F.Supp. 124; Locke v. United States, 1960, Ct.Cl., 283 F.2d 521, 523; United States Fidelity & Guaranty Co. v. Connors, 1921, 222 Ill.App. 1, 16. It was enough that the price would be reasonable. United States v. Swift & Co., 1926, 270 U.S. 124, 141, 46 S.Ct. 308, 70 L.Ed. 497; Beech Aircraft Corp. v. Ross, 10 Cir., 1946, 155 F.2d 615, 617; 46 Am.Jur., Sales, § 67 (1943). The subject matter was clearly understood and was not uncertain like that in Oakland Motor Car Co. v. Indiana Automobile Co., 7 Cir., 1912, 201 F. 499, 505. There was substantial evidence of the element of time. The facts in Red Wing Shoe Co. v. Shepherd Safety Shoe Corp., 7 Cir., 1947, 164 F.2d 415, 418 distinguish that case.

■ There is the evidence of Williams' planting the seed for development of the display under instruction from his superiors and his cooperation with Byrne. And there is the testimony of Thompson's coming from New York for the June 1955 conference and his implementation of the understanding reached. This evidence was sufficient to justify their authority to deal with Byrne for Shell.

We conclude that there is substantial evidence to support the special verdict and that the trial court properly denied Shell's motion for directed verdict and judgment notwithstanding the verdict. The facts here are far different from those in Streich v. General Motors Corp., 1955, 5 Ill.App.2d 485, 126 N.E.2d 389.

■ As to the breach of contract: The jury could reasonably have found that while Byrne was suffering the detriment of keeping the model from Shell's competitors, Shell—in violation of its duty of determining its "requirements" in good faith, Laveson v. Warner Mfg. Corp., D.C.D.N.J.1953, 117 F.Supp. 124— was carrying on negotiations with a competitor of Byrne's. And that eventually Shell cut short the stated deadline for orders when it appeared that the minimum "requirements" of 1,000 was in sight, and abandoned Byrne's display for his competitor's.

There is substantial evidence of damage to support the verdict. Plaintiff would have made $7.00 profit on each display purchased by Shell. There were 23,000 Shell dealers in the country. 500 of the 1,200 dealers in the Chicago Division approved and ordered the display. 6,300 Shell dealers in the nation had purchased an earlier annual promotion program. Where a breach of contract is shown, proof of damage need not be as specific as might otherwise be required. Excelsior Motor Mfg. & Supply Co. v. Sound Equipment, 7 Cir., 1934, 73 F.2d 725, certiorari denied 294 U.S. 706, 55 S.Ct. 352, 79 L.Ed. 1241.

We find no error in refusing to give instructions tendered for Shell. The court could properly have decided that the instructions complained of were either unsatisfactory statements of law, or, as in La Presti v. Goodall Oil Co., 7 Cir., 1961, 290 F.2d 653, unsatisfactory because stated in the language of the statute. We think the given instructions adequately presented the law which these three instructions were designed to cover.

For the reasons given, the judgment is affirmed.