234 So.2d 802 (1970)
Jules Toby HURST, Ind., etc.
v.
HARDWARE MUTUAL CASUALTY COMPANY et al.
A. P. CUNNINGHAM, Ind., etc.
v.
HARDWARE MUTUAL CASUALTY COMPANY et al.
Nos. 7894, 7895.
Court of Appeal of Louisiana, First Circuit.
April 13, 1970.
Rehearing Denied May 25, 1970.
*803 Smith & Gaudin, by E. Clark Gaudin, and John V. Parker, Baton Rouge, for appellants.
Frank M. Coates, Jr., Horace C. Lane, John S. White, Jr., and Roger M. Fritchie, Baton Rouge, for appellees.
Before LOTTINGER, BLANCHE and PICKETT, JJ.
BLANCHE, Judge.
These consolidated suits were tried for four days before a jury and at the conclusion thereof the jury dismissed plaintiffs' suit at plaintiff's costs in each matter. Plaintiffs have appealed complaining that errors by both the judge and the jury were of such a nature as to require that we either remand the case for trial or reverse the judgment of the trial court and award a money judgment in their favor. The suits are for personal injuries and damages resulting from the collision of an automobile driven by Charles Robert Ware with an asphalt spreader machine on U. S. Highway I-10. Injured in the accident were Mary M. "Mickey" Cunningham, then the nineteen year old daughter of plaintiff, A. P. Cunningham, and Fillmore Jay Hurst, then the nineteen year old son of plaintiff, Jules Toby Hurst. The damages sustained by Hurst were stipulated to be the sum of $3,500. Mickey Cunningham and Fillmore *804 Hurst were passengers in the automobile operated by Charles Robert Ware, a nineteen year old emancipated minor and the son of Owen W. Ware. The accident occurred during the early morning hours of December 21, 1966, on Interstate Highway I-10 in East Baton Rouge Parish on that section of the highway between College Drive and Airline Highway when the automobile in which they were riding came out of a fog patch and crashed into an asphalt spreader machine which had been left on the highway by Cenla Asphalt Corporation. At the time of the accident the interstate highway at that point was not officially open to traffic, and while most of the work was completed, the highway was still under construction by the principal contractor, Foster and Creighton Company, and its subcontractor, Cenla Asphalt Corporation.
The plaintiffs-appellants in one suit (Appeal Docket No. 7895) are A. P. Cunningham and his daughter Mary M. "Mickey" Cunningham, who has become of age and was appropriately made a party plaintiff since suit was filed. The plaintiff-appellant in the other suit (Appeal Docket No. 7894) is Jules Toby Hurst, individually and on behalf of his minor son Fillmore Jay Hurst.
The defendants-appellees in the Cunningham suit are enumerated and described as follows:
(1) Foster and Creighton, the prime contractor in charge of constructing U. S. Highway I-10 at the point where the accident occurred;
(2) The Travelers Insurance Company, the liability insurer of Foster and Creighton;
(3) Cenla Asphalt Corporation, a subcontractor in charge of blacktopping the shoulder of the road at the point where the accident occurred and the owner of the asphalt spreader machine involved in the accident;
(4) Employers Liability Assurance Corporation, Ltd., the liability insurer of Cenla;
(5) Aetna Casualty and Surety Company, the alleged liability insurer of Charles Robert Ware.
Charles Robert Ware was initially a defendant but plaintiffs, prior to trial, dismissed their suit against him as of nonsuit. Hardware Mutual Casualty Company, another alleged liability insurer of Charles Robert Ware, was also made a defendant, but after trial Hardware settled with the Cunninghams and obtained a release for it and for Charles Robert Ware. The Cunninghams have, therefore, appealed the judgment of the trial court dismissing their suit as to all defendants except Hardware.
The defendants-appellees in the Hurst suit are the same as in the Cunningham suit with the addition of Hardware. As stated above, Hardware settled with the Cunninghams but did not settle with Hurst.
Cenla and Employers have filed a third party demand against Aetna on this appeal and especially appeal the jury's having found no coverage by Hardware and Aetna. They also filed the same third party demand and appeal against Hardware which we previously dismissed.[1]
*805 Before considering special errors alleged on appeal as having been committed by the trial judge, we will first view the case with regard to appellants' contention that the verdict was contrary to the law and the evidence and should be reversed by us and judgment awarded in favor of the plaintiffs.
The record established beyond any doubt the negligence of Charles Robert Ware. He had proceeded on a new highway which was under construction and which had never been opened to traffic. To get on the highway, it was necessary for young Ware to drive around a barricade and two reflectorized signs, one warning "Road Closed" and the other "Do Not Enter." The jury evidently rejected the notion that the signs or barricades were not in place on the night of the accident. There was further evidence that Ware had been drinking on that particular night and was driving his car on a foggy highway at an excessive speed under the circumstances.
We will next consider together whether Foster and Creighton, the general contractor, and Cenla, its subcontractor, were guilty of any negligence proximately causing the accident. This determination cannot be made without first determining what duty if any was owed to the plaintiffs.
We conclude from a review of the evidence that the signs and barricades were in place at the time of the accident and those using the highway had to completely disregard their warning that the road was withdrawn from public use. The barricade extended across the paved section of the highway and the signs gave notice that the road was closed and traffic was warned "Do Not Enter." In order to gain access to the highway, it was necessary for those using the same to drive around the barricades and signs by partially using the shoulder of the road. Sergeant Martin Fritcher of the Louisiana State Police described the barricade as across the paved section of the interstate and further testified that he had to drive on the grassy section of the highway to get around it. Mr. Humberto Gutierrez, a Highway Department employee, saw the barricades and signs in place in the late evening of the day of the accident and at approximately seven o'clock on the morning following the accident. We believe that the jury had ample evidence to conclude that the signs and barricades were adequate to inform the public that the road was closed and withdrawn from public use. The conclusion, therefore, follows that plaintiffs' presence on the road on the night of the accident was in disregard of a barricade and adequate warnings and that they were in fact trespassers.
The duty owed by defendants under the foregoing circumstances is described in Blashfield Automobile Law and Practice, 3d ed., Sec. 163.10 under the title "Road Not Open to Traffic" as follows:
"* * * even though a motorist using a road not open to traffic is a trespasser, he is nonetheless entitled to protection from willful or wanton injury or gross negligence. * * *"
In light of the foregoing evidence the jury could have justifiably concluded that the defendants had discharged their duty with adequate warnings to the public to keep off the road and had no further duty to put adequate warnings around an asphalt spreader which was alleged to have been left on the highway.
We believe, however, that ordinary standards of negligence apply if plaintiffs' presence on the highway was reasonably to be anticipated or foreseeable even though the road was closed. In this event, the defendant contractors should not be able to hide behind "Road Closed" signs as an excuse for not having taken adequate precautions to warn motorists of the danger ahead.
Again, the jury would have been justified in finding that plaintiffs failed to prove that the highway was in such use. Unquestionably, some drivers ignored the signs and barricades and drove around *806 them, but the evidence is far short that the highway was in such use that the defendants should have anticipated or foreseen that someone might be injured as a result of their failure to place warnings around dangerous conditions that may have existed on the road. It is true that Foster and Creighton a couple of months before the accident enlisted the aid of the State Police to issue traffic tickets to motorists using the highway. There is also evidence that the public was warned in the newspapers and on television that the road was not open to use, but the conclusion does not follow from these facts that the highway was in such use as contended by plaintiffs. Such facts are evidence that the highway was at one time in such use that Foster and Creighton employed reasonable methods to keep the public off the highway until it was finished and are also further evidence that the said contractor discharged his duty to the public to warn them that the road was closed to traffic.
We next consider whether the court's instruction concerning the legal duty of defendants Foster and Creighton and Cenla was inadequate and therefore confusing to the jury. The court properly charged that "no duty exists in most instances" toward a trespasser except to refrain from willful or wanton injury. Appellants, while not conceding they were trespassers, urged that the instruction did not go far enough and the court should have instructed the jury in those cases where a duty of reasonable and ordinary care is owed a person even though considered a trespasser. The requested instruction which the court refused to give reads as follows:
"You are charged that everyone owes the duty to exercise ordinary care to prevent injury to one whose presence is reasonably to be anticipated. If you find that motorists frequently entered a portion of highway I-10, even though not yet officially opened, and such fact was known to the Foster and Creighton Company and Cenla Asphalt Corporation, you are charged that Foster and Creighton Company and Cenla Asphalt Corporation had the duty to anticipate the presence of such persons and to use reasonable care to prevent injury to them." (Cunningham Requested Instruction No. 15, Record, p. 136)
However, the court did give the following instructions:
"8. You are charged that one who placed an obstruction upon a public thoroughfare incurs the legal duty of erecting warnings to the public of a size and nature commensurate with the extraordinary hazard or unusual danger created. Violation of this duty constitutes negligence and causes this party to be at fault and liable for any damages caused to another. If you find that the portion of the highway where the accident occurred was actually being used by the public, irespective [sic] of whether it was officially open, and Cenla Asphalt Corporation knew, or should have known it was being so used, then you are charged that Cenla Asphalt Corporation had the legal duty to refrain from leaving obstructions on the roadway which created an extraordinary hazard or unusual danger without taking reasonable precautions commensurate with the danger to warn such motorists of the hazard.
"9. You are charged that if Foster and Creighton Company had actual or constructive notice of the presence of an obstruction left in the construction area by its subcontractor, Cenla Asphalt Corporation, and had actual and constructive knowledge of the fact that the highway was being utilized by the public prior to its being officially opened, such factors may be taken into account in determining whether Foster and Creighton Company exercised due care in warning the public of the potential dangers. Warnings and means of protection of danger on highways should be of a size and nature commensurate with the danger that lies ahead, and in some instances, complete barricades should be erected and properly *807 lighted and warning signs erected and maintained." (Court's Charge to the Jury, Transcript, pp. 518, 519)
We believe the instructions were adequate to inform the jury of an instance when a duty of ordinary care was required by the defendants and were not misleading because they were not given in the same breath in which the court instructed the jury as to the duty owed to a trespasser or licensee.
It is a fundamental rule that a trial court is not required to give every charge requested or to instruct the jury in the particular manner or form requested by the parties, even though such instructions state correct principles of law, if the subject matter of such requested special instructions was sufficiently covered by other instructions from the court. Messer v. L. B. Foster Company (5 Cir. 1958), 254 F.2d 412; Gerhart v. Henry Disston & Sons, Inc. (3 Cir. 1961), 290 F.2d 778; Southern R. Co. v. Haynes (5 Cir. 1961), 293 F.2d 291; Wiper v. Erie Sand S. S. Co. (2 Cir. 1961), 293 F.2d 491; Bryne v. Shell Oil Co. (7 Cir. 1961), 295 F.2d 797; Miller v. Brazel, (10 Cir. 1962), 300 F.2d 283; Mathes & Devitt, Federal Jury Practice & Instructions (West, 1965), Sec. 5.01 et seq., p. 50; Fleming v. Michigan Mutual Liability Company (5 Cir. 1966), 363 F.2d 186.
Having affirmed the verdict of the jury insofar as it exonerated Foster and Creighton and Cenla from any negligence, it is unnecessary to consider the third party demand of Cenla and Employers against Aetna, the alleged insurer of Charles Robert Ware.
Cunningham also contends that the judgment dismissing its suit against Aetna as the liability insurer of Charles Robert Ware is erroneous. Aetna issued a liability policy to Ware Insurance Agency, Inc., covering the automobile which was involved in the accident and driven by young Ware. The policy was applied for by Mr. Owen W. Ware, the father of Charles Robert Ware, who testified that they were unable to get as much coverage as they had wanted from Aetna, but Aetna had agreed to write a certain amount of the insurance provided there was no coverage while his youngest son (Charles Robert Ware) was driving the car. Mr. Ware agreed to this condition and an agent of Aetna, Mr. Orvin B. Jones, testified that they were not willing to accept young Ware as a risk and would issue the policy only if the exclusion was included.
An insurance policy is a contract between two parties, and the parties may insert any provision or exclusion they desire, so long as the policy complies with the Insurance Code or considerations of public policy. No authority has been cited nor do we know of any that declares that the exclusion of a driver from coverage under a policy for the purpose of inducing the company to issue the policy is against public policy. The exclusion of young Ware as an insurance risk was an inducement for Aetna to issue the policy.
The exclusion of young Ware from the policy as an insurance risk was contained in a rider which was attached to the policy. Under the omnibus clause of the policy young Ware would qualify as an insured. We are asked by appellant to disregard the plain wording of the exclusionary rider because it conflicts with the provision of the omnibus clause of the policy. We fail to see how these provisions are conflicting. The omnibus clause provides that those driving the automobile covered by the policy with the permission and consent of the named insured will be considered as additional insureds. The endorsement, in effect, merely limits the scope of the omnibus clause so as to exclude young Ware. We see no reason why the parties to the insurance contract could not restrict or modify the terms of their insurance agreement as to additional insureds under the omnibus clause by way of a restrictive endorsement. In Loubat v. Audubon Life Insurance Company, La.App., 170 So.2d *808 745, 749 (La.App. 1st Cir. 1964), we commented on the effect to be given the component provisions of an insurance contract and quoted from Hemel v. State Farm Mutual Automobile Insurance Company, 211 La. 95, 29 So.2d 483, as follows:
"`Effect must be given to every part of the agreement if it is possible and while it is the universal rule of construction that all ambiguities must be construed in favor of the insured and against the insurer, when the intent of the parties is evident from the terms of the contract there is nothing for the court to construe and the policy must be given a reasonable interpretation consonant with the apparent object and plain intent of the parties.' (Emphasis added.)"
Neither Ware nor Aetna ever claimed protection or coverage under the policy, and the verdict of the jury that Aetna did not insure Charles Robert Ware is correct and dismissal of plaintiff's suit as to Aetna is affirmed.
We now consider the question of whether insurance coverage by Hardware as the insurer of Southern Fleet Leasing Corporation extended to Ware Insurance Agency, Inc., and to Charles Robert Ware who was driving the automobile involved in the accident.
Southern Fleet Leasing Corporation leased to Ware Insurance Agency, Inc., the automobile involved in the accident. Hardware had issued to Southern Fleet two insurance policies covering automobiles leased by the said corporation to others. Both policies contain a provision, however, excluding coverage with regard to an automobile leased under a contract requiring the lessee to provide bodily liability insurance coverage.[2]
The following interrogatories were propounded to the jury and were answered as indicated:
"10. Did Lease Number 2632 Dated May 7, 1964, from Southern Fleet Leasing Corporation to Ware Insurance Agency, Inc. of the 1964 Buick 4 door sedan require the Lessee to bear the cost of liability insurance?
 12
 yes
"11. Did Ware Insurance Agency, Inc. pay premiums to Hardware Mutual Casualty Company or to Southern Fleet Leasing Corporation for liability insurance?
 12
 no"
These answers amounted to a factual finding by the jury that the exclusion clauses of both policies were applicable.
Plaintiff Hurst contends that the lease did not contain an agreement that Ware would furnish its own insurance. This is correct. The crucial question, however, is whether the lease contract required the lessee to furnish insurance coverage, thereby making the exclusion clauses of both of the Hardware policies applicable. We are satisfied that the lease does in fact require the lessee to furnish liability insurance coverage and that neither of the Hardware policies is applicable. Paragraph 11 of the lease agreement places full responsibility for the vehicle and for all matters *809 arising from its use by the lessee upon the lessee and further requires that the lessee indemnify the lessor from any liability resulting from such use. Paragraph 12 of the lease agreement relative to insurance provides in subpart (c) that:
"Lessee agree that the leased vehicle shall not be used until all insurance herein required is in full force and effect." (Hardware Exhibit No. 3)
Paragraph 12 dealing with insurance in subpart (a) contains a provision which authorizes the lessor to provide insurance at the lessee's expense, but the evidence shows that the lessor did not do so and that neither the lessor nor the lessee expected liability insurance to be afforded by Southern Fleet Leasing Corporation. The evidence is to the contrary and shows that Ware Insurance Agency, Inc., was to furnish its own insurance. Owen W. Ware, who is in the business of writing insurance, testified that he preferred to furnish his own liability insurance rather than to obtain insurance through the lessor. In this particular case he obtained insurance from Aetna. Anetta Juneau, a bookkeeper for Southern Fleet Leasing Corporation and custodian of the lease records, testified that Ware Insurance Agency paid no money for liability insurance coverage to Southern Fleet Leasing Corporation in connection with its monthly payments on the lease and that no such charge was shown on the lease for insurance premiums. This bookkeeper further testified that Southern Fleet has a practice or requirement that the lessee show evidence of insurance with some company and that the lessee in this case did furnish the lessor with a certificate of insurance reflecting coverage provided by the Aetna Casualty and Surety Company. (Record at pp. 383-386; Hardware Exhibit No. 5) We conclude that the jury's findings are in accord with the evidence, and the judgment dismissing Hurst's suit against Hardware is correct.
Finally, we refer to the alleged error of the trial judge concerning the submission of interrogatories to the jury. Under the provisions of Articles 1811 and 1812 of the Louisiana Code of Civil Procedure, the judge is authorized to submit to the jury special interrogatories. Appellant Cunningham contends that thirteen of the interrogatories asked for conclusions of law instead of findings of fact and that accordingly it was impossible to determine what facts the jury found as a basis for its conclusions.
In a case where the court does not know the facts on which the jury based its conclusions, we are directed in Rowe v. Travelers Insurance Company, 253 La. 659, 219 So.2d 486 (1969), to make our own findings of fact. Our independent review of the facts, all as set forth hereinabove, reveals that the jury's conclusions were consistent with and supported by the evidence.
For the above and foregoing reasons, the judgment of the trial court is affirmed at appellants' costs.
Judgment affirmed.
NOTES
[1] In a previous appeal of this matter we held that a co-tort-feasor and its insurer could institute a third party demand on appeal against a fellow tort-feasor's insurer though no such action had been instituted in the trial court. We, therefore, maintained Cenla's and Employer's third party action and appeal as against Aetna, the alleged insurer of the co-tort-feasor Ware. However, we dismissed the third party action and appeal against Hardware holding that the plaintiffs' release of Hardware as the insurer of a co-tort-feasor prevented contribution from the released tort-feasor, and should plaintiffs ultimately recover on appeal, their claim would be reduced to the extent that the released tort-feasor would otherwise have been liable to his co-tort-feasors in solido. Cunningham v. Hardware Mutual Casualty Company, 228 So.2d 700 (La.App. 1st Cir. 1969).
[2] The clause in Policy No. 90-12321-08 (Hardware Exhibit No. 1) reads as follows:

"Exclusions: * * *
"(2) The insurance for bodily injury liability and for property damage liability with respect to an owned automobile does not apply to any leased automobile while such automobile is in the custody of a lessee under a contract of lease which requires the lessee to provide the liability insurance thereon."
The clause in Policy No. 90-12321-010 (Hardware Exhibit No. 2) reads as follows:
"Exclusions:
"This policy does not apply:
"1. To any leased automobile leased under a contract requiring the lessee to provide bodily injury liability and property damage liability insurance."