295 So.2d 78 (1974)
L. J. WOOD, Plaintiff-Appellee,
v.
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Defendant-Appellant.
No. 12226.
Court of Appeal of Louisiana, Second Circuit.
February 12, 1974.
Rehearing Denied March 19, 1974.
Writ Refused May 24, 1974.
*79 Philip K. Jones, Norman L. Sisson, Robert J. Jones and William J. Doran, Jr., Baton Rouge, for defendant-appellant.
*80 Watson, Murchison, Crews & Arthur by William P. Crews, Jr., Natchitoches, for plaintiff-appellee.
Before AYRES, HALL and WILLIAMS, JJ.
En Banc. Rehearing Denied March 19, 1974.
HALL, Judge.
Plaintiff, L. J. Wood, was injured when the automobile in which he was riding as a passenger collided with a wooden barricade on a segment of Interstate Highway 20 between Start and Rayville in the early morning of October 9, 1970. Plaintiff sued the Louisiana Department of Highways which erected and maintained the barricade. The Department answered denying liability and, alternatively, pleading plaintiff's contributory negligence as a bar to recovery. The Department also filed a third party petition against Roy Solice, driver of the automobile, seeking contribution against the third party defendant as a joint tort feasor in the event the Department were held liable to plaintiff.
Finding both the Department and Solice guilty of negligence causing the accident, the district court rendered judgment against the Department in favor of plaintiff for $3,725.05 and in favor of the Department against Solice for one-half of this amount, pursuant to written reasons for judgment. The Department appealed. Solice did not appeal. Plaintiff answered the appeal seeking an increase in the amount of the judgment. We affirm the judgment of the district court.
The accident occurred while plaintiff and his son-in-law, Solice, were driving to work in the early morning. Both were employed by a construction firm engaged in work on I-20 at a site approximately six miles east of the Rayville exit. Both lived in Campti and drove to work every morning, sometimes in plaintiff's car and sometimes in Solice's car, by proceeding easterly on I-20 to the construction site.
On the date of the accident I-20 was officially open for traffic to the Start exit, about six to eight miles west of Rayville. At the Start interchange the highway was clearly marked with barricades, "Road Closed" and "All Traffic Exit" signs and other warnings fully advising motorists that all traffic should exit and that the section of the highway from the Start exit eastward toward Rayville was closed and not open for traffic.
By exiting I-20 at this point, however, and crossing Louisiana Highway 133, automobiles could and customarily did re-enter I-20 by going around a barricade at the entrance of the entry ramp. The segment of I-20 from the Start exit easterly past the Rayville exit was not officially open but this section of the highway had been substantially completed and accepted by the Louisiana Department of Highways on June 9, 1969, approximately sixteen months prior to the date of the accident. Local traffic used this section of the interstate highway to a considerable extent to the actual knowledge and apparently with the tacit consent of the Department of Highways and State Police.
On the morning of the accident, as on all prior trips to the construction site, Solice left I-20 at the Start exit, crossed Highway 133 and re-entered I-20 in the manner described. He proceeded easterly and as he approached and passed the Rayville exit was driving at a speed of sixty to sixty-five miles per hour in the outside lane with his lights on high beam. At a point approximately two hundred feet east of the Rayville exit, the Solice vehicle struck a wooden barricade in the outside lane of the highway, resulting in injuries to plaintiff.
The barricade was constructed of wood, approximately six feet in height, twelve feet in length and ten inches in width. The "sawhorse" type barricade was of light construction, was not stationary or permanent, and was easily moved. It was marked with reflectorized strips of tape on the sides but not on the ends.
Ordinarily, the barricade was placed by the Department of Highways immediately *81 past the Rayville exit perpendicular to the highway and extending out into the outside eastbound lane of the highway. Its purpose was to encourage traffic to exit at the Rayville exit and to remind traffic that this section of the highway was not open and there was construction ahead.
At the time of the accident, the barricade had been moved from its normal position and was located about two hundred feet east of the Rayville exit. It was positioned in the outside eastbound lane of the highway, parallel instead of crossways the lane, with its end facing eastbound traffic. In this position with no reflector tape on the end, which was only about ten inches wide, the barricade was extremely difficult to observe at night. Solice testified he did not see the barricade until he was too close to avoid striking it.
The evidence is that the barricade erected and maintained by the Department had been moved and/or struck either accidentally or on purpose by the motoring public on numerous occasions to the knowledge of the Department. The Assistant District Engineer in charge of maintenance testified they seldom found the barricade in the position they placed it when they went back the next day and that it often got moved around by someone or something. He further testified that several times the barricade had been hit and shattered all over the road. The Department's Sign and Traffic Superintendent testified he received several calls to come and fix the barricade. The Highway Maintenance Superintendent testified he received calls about the barricade being torn down or moved and that they repaired the barricade several times. He testified sometimes they would repair it and sometimes they were unable to repair it and had to rebuild it.
The district court correctly analyzed the duty owed by the Highway Department to the motoring public under the circumstances of this case. The occupants of the Solice vehicle were in the position of trespassers in driving on the unopened section of I-20. Ordinarily, an owner owes no duty to a trespasser except to refrain from willfully or wantonly injuring him. However, where trespassers on property are habitual and known to the owner or occupant so as to impose upon him the duty to anticipate the presence of trespassers, such owner or occupant is bound to use reasonable care to prevent injury to trespassers. Friedman's Estate v. Texas & Pac. Ry. Co., 209 La. 540, 25 So. 2d 88 (1946); Doyle v. Thompson, 50 So. 2d 505 (La.App. 1st Cir. 1951).
Hurst v. Hardware Mutual Casualty Company, 234 So.2d 802 (La.App. 1st Cir. 1970) writ refused 256 La. 618, 237 So.2d 398 (1970), is closely in point. Although the result of that case is distinguishable from the instant case on the facts, the issues involved were the same and the law applied in that case is applicable to the case at bar. In Hurst several plaintiffs brought suit against a highway construction firm, its subcontractor and their insurance carriers for personal injuries received when the vehicle in which they were riding crashed into an asphalt spreader machine on a section of an interstate highway that was not officially opened to traffic. There was substantial evidence that barricades and warning signs were sufficient to advise the motoring public the highway was closed. There was evidence some drivers ignored the signs and barricades and drove around them, but the evidence, according to the court's findings, was far short of proving the highway was in such use that the defendant should have anticipated or foreseen someone might be injured as the result of failure to place warnings around dangerous conditions existing on the road. On the basis of these factual findings the court affirmed a jury verdict in favor of the defendants. However, the court enunciated the applicable principle of law as follows:
"We believe, however, that ordinary standards of negligence apply if plaintiffs' presence on the highway was reasonably to be anticipated or foreseeable *82 even though the road was closed. In this event, the defendant contractors should not be able to hide behind `Road Closed' signs as an excuse for not having taken adequate precautions to warn motorists of the danger ahead."
In the case at bar, unlike the Hurst case, the evidence clearly establishes that the officially unopened segment of the highway on which the accident occurred was in wide and frequent use by the public, to the knowledge of the Highway Department. The presence on the highway of vehicles was reasonably to be anticipated and foreseen by the Department. That someone might be injured as the result of dangerous obstructions in the road was reasonably to be anticipated and foreseen by the Department. Consequently, the ordinary standards of negligence apply and the defendant Department owed a duty of reasonable and ordinary care.
The district court also correctly concluded the Department of Highways failed to discharge and breached its duty of reasonable care. The barricade placed and maintained by the Department was light and could be moved easily. It had, in fact, been moved and struck on numerous occasions prior to the accident to the knowledge of the Department. When located in any position other than crossways the highway it was difficult to observe, particularly at night. The barricade was, in fact, a dangerous object. Allowing this dangerous object to remain on the highway was negligence on the part of the Department. This negligence was a cause-in-fact of the accident.
On appeal defendant's primary contention is that plaintiff should not recover unless it is shown the Department had actual or constructive knowledge that the barricade was out of position and failed to take steps to correct the condition. Defendant argues it was not shown how long the barricade had been out of position prior to the accident, that the Department had an adequate system of inspecting the highway and cannot be expected to maintain a constant vigil of all barricades and signs, and should not be held responsible since the barricade was moved by someone else without the Department's knowledge. These contentions overlook the basic premise on which the Department's negligence is based, that is, placing and using this type of easily movable barricade on the highway in the first place, particularly in view of the Department's knowledge of the numerous previous incidents involving the barricade.
Defendant specifies the district court erred in failing to find plaintiff guilty of contributory negligence. Defendant contends plaintiff was negligent in failing to caution or warn the driver, Solice, against use of the officially unopened highway. It is argued that since the court found Solice guilty of negligence then plaintiff should also be found negligent.
Solice was found negligent on the basis of the manner of his operation of the vehicle, particularly his failure to keep a proper lookout while driving on a highway officially closed to traffic. His negligence was not based on use of the highway alone. It was not shown that plaintiff had control of the route taken and he certainly had no control over the operation of the vehicle. Traveling on the highway in question was not in and of itself negligence. The district court correctly rejected defendant's plea of contributory negligence.
Plaintiff, by answer to the appeal, urges the award made by the district court is too low and amounted to an abuse of discretion and should be increased. The district court awarded $640 for loss of wages, $585.05 for medical expenses and $2,500 for pain and suffering.
The evidence relating to plaintiff's injury consists of the testimony of plaintiff and his wife, the records of St. Francis Hospital, a narrative report by Dr. Frank P. Rizzo, Jr. dated November 29, 1971, and *83 a narrative report by Dr. C. W. Lowery dated April 13, 1972.
After the accident on October 9, 1970, plaintiff was taken to St. Francis Hospital where he was seen by Dr. Rizzo. He had extensive multiple lacerations of the head, ear and neck which were sutured by the doctor. A report of the radiology department was essentially negative except that it reports considerable soft tissue swelling and damage near the base of the neck on the right and a probable linear fracture in good position through the transverse process of C-7 on the right. The possible fracture is not mentioned in any other doctor's report.
Dr. Rizzo's report does not mention his original treatment of plaintiff, but refers to a re-evaluation on September 22, 1971, almost a year after the accident. The patient complained of dizzy spells, pain on the right side of the head and weak vision in his right eye. Dr. Rizzo reported the lacerations suffered in the accident showed complete healing. There was no evidence of scar contracture or disability from these lacerations. Neurologic examination was grossly normal. The patient was advised to see Dr. Don Irby, a neurosurgeon who had seen the patient while he was in the hospital. It was Dr. Rizzo's opinion that the injuries received by plaintiff had healed to their fullest extent and that no further improvement could be expected.
Dr. Lowery examined plaintiff April 12, 1972, shortly before trial. Dr. Lowery noted the lacerations apparently healed without drainage after three weeks. Plaintiff complained of dizziness and frequent headaches. Dr. Lowery's diagnosis was (1) healed lacerations, right side of neck, and (2) probable cervical strain. The doctor felt the sensory loss in the side of the neck is probably due to peripheral nerve sectioning as a result of the multiple lacerations and in view of the fact that this is over sixteen months post injury it is probable these symptoms will be permanent. He recommended a neurosurgeon's evaluation as to the dizziness.
The record does not contain any report from Dr. Irby, the neurosurgeon, nor from Dr. Stassi who plaintiff testified also treated him.
Plaintiff testified he was treated by Dr. Rizzo for two or three months and then discharged as able to return to work. He stated he tried to work one day but could not because of dizziness and a tendency to black out. He testified he has not worked since the accident, a period of almost a year and a half. He testified he has not been under the treatment of any doctor since about two or three months after the accident and that he has never been told by any doctor that he could not go back to work.
The district court awarded plaintiff damages for loss of wages for a period of eight weeks which the court stated was giving plaintiff the benefit of every doubt. The district court concluded the loss of sensation in plaintiff's neck should not disable him entirely and an award for loss of wages for a longer period of time could not be justified. The lacerations healed promptly without permanent disability according to Dr. Rizzo's report.
Our review of the evidence relating to plaintiff's injury reveals no abuse of the much discretion vested in the trial judge in fixing the amount of damages.
For the reasons assigned, the judgment of the district court is affirmed at defendant-appellant's cost.
Affirmed.